[No. A058248. First Dist., Div. Two. Aug. 13, 1993.]

SAFECO INSURANCE COMPANY OF AMERICA et al., Plaintiffs and Appellants, v.
J & D PAINTING et al., Defendants and Respondents.

COUNSEL

Hoffman & Lazear and Arthur W. Lazear for Plaintiffs and Appellants.

Kincaid, Gianunzio, Caudle & Hubert, John P. Caudle, Marjorie Heinrich and John P. Cotter for Defendants and Respondents.

OPINION

KLINE, P. J.—H. Tim Hoffman appeals from a judgment dismissing his action against respondent J & D Painting following the court's grant of summary judgment to respondent. In the dismissed action, appellant, who had already recovered the cost of repair for fire damage to his house, sought additional damages to compensate him for the decline in market value that his house suffered during the five months that it was being repaired. We affirm.

### STATEMENT OF THE CASE/STATEMENT OF FACTS

On March 29, 1990, Safeco Insurance Company of America (Safeco) filed a complaint in Contra Costa County Superior Court against J & D Painting

(J & D), alleging that J & D's employees had negligently caused a fire at appellant's home, which was insured by Safeco. Safeco had already paid appellant $247,118.81 for repairs to the home, and $19,500 for the loss of use of the home while it was being repaired, and sought to recover that money from J & D. This action was later settled.

Hoffman later filed a separate complaint against J & D, claiming damages for "Loss in value to property due to lost opportunities." Appellant alleged that in the time it took to make the repairs (August 1989 to January 1990) the value of his property declined by $300,000, owing to a general decline in market value for such houses in that area. Appellant further alleged that as a result of his inability to sell the house at the July 1989 value, he was obliged to pay interest on loans incurred to pay for the property for almost two years. He sought to recover from J & D the loss in value of the house from July 1989 to January 1990, as well as the extra mortgage interest payments he was required to pay during that period.

J & D responded with a motion for summary judgment, which was granted. The ruling was based on the court's stated view that "the rule is inflexible that plaintiff can't recover the higher of diminution in value or cost of repair but only the lesser. This rule cannot be subject to the vagaries of the market place." This appeal challenges that view.

## DISCUSSION

As a general rule, a plaintiff in a suit for negligent damage to real property is allowed to recover either the cost of repair or the diminution in value, but not both. (*Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 576 [136 Cal.Rptr. 751].) It clearly makes sense to allow only one measure of recovery. "A plaintiff in a tort action is not, in being awarded damages, to be placed in a better position than he would have been had the wrong not been done." (*Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 821-822 [278 P.2d 91]; *Christiansen* v. *Roddy* (1986) 186 Cal.App.3d 780, 789-790 [231 Cal.Rptr. 72]). Allowing both measures of recovery would generally violate this principle.

It is ordinarily appropriate to employ the lesser of the two measures (*Ferraro* v. *Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 49 [162 Cal.Rptr. 238]); otherwise plaintiffs might recover large sums for "injury" to property that subtracts little or nothing from—or occasionally even adds to—its value. This concern is motivated both by a judicial antipathy towards

economically wasteful activity, and by the difficulty of assuring that the award is used for the announced repairs and not simply pocketed as a windfall.

■ The grant of summary judgment in this case is thus in line with the standard measure of recovery. Appellant has recovered the cost of repair, the house has been repaired, and he possesses exactly the same property he had before. Indeed, he may in one sense be better off, since a large part of his property is newly constructed.[1]

■ Appellant claims, however, that the rules pertaining to compensation of damage to real property are not hard and fast but "flexible." (Citing, e.g., *Heninger* v. *Dunn* (1980) 101 Cal.App.3d 858, 862 [162 Cal.Rptr. 104]; *Brandon & Tibbs* v. *George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 466 [277 Cal.Rptr. 40].) For example, he points to a number of cases allowing the cost of repairs even when it exceeds the diminution in value. This departure from the usual rule is permitted where the plaintiff can show that the loss in value *to him or her* is indeed greater than the diminution in value (the "personal reason" exception), and that the repairs will definitely be made. (*Heninger* v. *Dunn, supra,* 101 Cal.App.3d 858, 863; *Orndorff* v. *Christiana Community Builders* (1990) 217 Cal.App.3d 683, 687-688 [266 Cal.Rptr. 193].)

According to appellant, such flexibility should work both ways. If cost of repair is occasionally allowed, even when it exceeds the diminution in value, diminution in value should be awarded even when it exceeds the cost of repair. Appellant concedes no cases authorize such an exception, but argues that this is only because there have never been any cases in which the loss in value exceeded the cost of repairs until the recent decline in California real estate values. Appellant maintains that an exception based on the unusual decline in the market is analogous to the "personal reasons" exception to the general rule, and consistent with the general principle that injured parties should be placed in the position they were in immediately before the tort. Appellant bases this contention upon Civil Code section 3333, which states

[1]Even if appellant were to be awarded the diminution in value rather than the cost of repair, his claim comes too late. It is settled that the loss in value of destroyed property is measured as the difference between the value immediately before the tort and the value *immediately* after. (*Ferraro* v. *Southern Cal. Gas Co., supra,* 102 Cal.App.3d 33, 50). Appellant's claim that he was "unable to sell" the property during the period between the fire and the completion of the repairs unjustifiably assumes the damaged property could not be sold. No reason appears why he could not have sold the property immediately at a reduced price and recovered from the insurer the difference between what he received and the market value. The difference in value would presumably have approximated the cost of repairs.

that: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

It is undeniable that appellant might be able to show he has been harmed in the way he alleges. Certainly, the recent decline in value of certain types of California real estate is not speculative and can be measured. It is also true that appellant does not seek double damages in the usual sense of the term. If his repaired house is worth $300,000 less than it was in July 1989, then a recovery of that amount above the cost of repair would be no more than restorative. However, appellant's inability to identify a single case—from this or any other jurisdiction—awarding damages for a loss of the type he allegedly suffered (lost opportunity to sell in a high market owing to the time needed to repair negligently inflicted damage) indicates that even a flexible rule resists his procrustean stretch. The rule that appellant would have us adopt does not fit within the underlying tort doctrines.

As already noted, it is conceded appellant might be able to show that, but for respondent's negligence, he would have been able to sell his house earlier for more than he can now obtain. The rule for recovery in tort has never rested solely on "but for" causation (cause in fact), but has also been based on proximate cause. Thus, Civil Code section 3333 mandates recovery not simply for all detriment caused by defendant's negligence, but for all detriment *proximately caused* thereby. The wording of the statute is manifestly designed to make the trier of fact focus closely on the issue of proximate cause.

A superseding cause utterly unrelated to the defendant's negligence breaks the chain of proximate causation and is a bar to recovery. " 'Liability cannot be predicated on a prior and remote cause which merely furnishes the condition or occasion for an injury resulting from an intervening unrelated and efficient cause, even though the injury would not have resulted but for such condition or occasion; . . . .' " (*Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660, 664 [130 Cal.Rptr. 125], quoting 65 C.J.S. (1966) Negligence, § 111(4), p. 1213.) Although appellant might have sold his house at a high price but for respondent's negligence, the decline in the market bore no relation whatsoever to the acts of respondent. Respondent's negligence, if such there was, was merely the condition or occasion for the market decline to affect appellant's house.

In assessing proximate cause, courts also look to the foreseeability of the superseding cause of injury. (*Johnson* v. *Union Furniture Co.* (1939) 31

Cal.App.2d 234 [87 P.2d 917].) It can hardly be said that respondent should have foreseen the steep decline that has occurred in California real estate values. If history had been any guide, a delay in sale of property in California would more likely increase the return of the owner.

 This case is different from slander of title or wrongful attachment cases, in which plaintiffs have been awarded the difference in market value between the time of imposition of a lien and the time of its lifting (see, e.g., *Gudger* v. *Manton* (1943) 21 Cal.2d 537, 554-555 [134 P.2d 217], disapproved on other grounds in *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 381 [295 P.2d 405]) because in those cases the defendant acted intentionally to adversely affect the marketability of a property, and therefore the decline in market value may be seen as proximately related to the tort.[2]

 Under a proximate cause analysis, there is a clear distinction between awarding cost of repair even when it exceeds the diminution in value (which is permissible) and awarding diminution in value even when it exceeds the cost of repair (which is impermissible). Destruction which the court allows to be repaired for personal reasons, at a cost exceeding the diminution in value, is clearly proximately caused by the defendant's negligence. There is no such causal connection here.

Finally, there is no compelling public policy reason to allow plaintiffs to recover when the time needed to repair negligently inflicted property damage coincides with a general decline in the market for such properties. Such a recovery would surely not deter negligence in any meaningful way. A person in appellant's predicament has lost an opportunity to sell in a high market, but the opportunity may present itself again. Most people sell houses in order to buy other houses, and the values of those other houses are often subject to the same market forces. Those unlucky enough to sell in low markets are often able to buy in low markets. Respondent's negligence

---

[2]It is not always clear whether a judicial reference to decline in market value means a decline which is actually the result of the defendant's negligence or of a general decline in market value of property. Slander of title can diminish the value of property independently of market forces, since a property whose title is not clear is still saleable, though at a discount for the risk entailed. One case in which it is clear that the court is talking about a general market decline during a period of attachment is *Heath* v. *Lent* (1851) 1 Cal. 410, which rejected plaintiff's contention that the difference in value be awarded: "All the testimony in regard to the depreciation of real estate during the time when the attachment was in existence . . . ought not to have been submitted to the jury. Such injuries are too remote, and cannot be the immediate result of an attachment upon real estate, of which the possession is not taken on the writ." (*Id.*, at p. 412.) (It is not clear that the plaintiff in *Heath* had wished to sell the property, however.)

appears only to have deprived appellant of the fortuitous opportunity to sell in an inflated market. To the extent appellant's desire to sell in July 1989 may have been motivated not by exigencies but by an astute analysis of the market, the less excusable was it for him to wait to sell until repairs were finished.

The judgment is affirmed. Respondent shall recover its costs.

Smith, J., and Phelan, J., concurred.