[No. A059741. First Dist., Div. Two. Apr. 28, 1994.]

SHAUCAT SALAHUTDIN et al., Plaintiffs and Respondents, v.
VALLEY OF CALIFORNIA, INC., Defendant and Appellant.

COUNSEL

Hoge, Fenton, Jones & Appel and Scott R. Mosko for Defendant and Appellant.

Miller, Starr & Regalia and Lola C. Ellwein for Plaintiffs and Respondents.

OPINION

**KLINE, P. J.**—Defendant Valley of California, Inc., doing business as Coldwell Banker Residential Real Estate of Northern California (Coldwell Banker), appeals from a judgment of the San Mateo County Superior Court awarding plaintiffs husband and wife, Shaucat and Jeannie S. Salahutdin, damages of $175,000 plus costs against Coldwell Banker. The trial court found that while representing plaintiffs in a real estate purchase, appellant's employee David Seigal breached his fiduciary duty of care and committed

constructive fraud by making false representations to plaintiffs that the property they purchased was more than one acre in size and that it could be subdivided where, in fact, the property was less than one acre and could not be subdivided. Appellant contends (1) substantial evidence does not support the finding of constructive fraud; (2) the court erred in awarding "benefit of the bargain" damages under Civil Code section 3333;[1] and (3) damages should have been calculated as of the time of the transaction, not the time of discovery. We shall affirm the judgment.

### Statement of Facts

Plaintiffs were born in Korea. Shaucat Salahutdin's parents were peasants who fled Russia during the 1917 Revolution. They settled in Korea, but, because they were considered "stateless," were unable to own land in that country. As a consequence, it was very important to plaintiffs to be able to leave land to their children.

When plaintiffs sold their home in San Mateo, they decided to look for property in Hillsborough which eventually could be subdivided and left to their two children. They informed their real estate agent, David Seigal, of their interest and that it was important that the property they purchased could be left to their son and daughter. They specifically told Seigal it was their intent to move to a house for the last time and to subdivide the property so that one-half could be left to their daughter and one-half to their son. Seigal "educated" plaintiffs on how to leave the property to their children. He advised them that property in Hillsborough could not be subdivided unless it was larger than one acre and that it would not be easy to find such property. Plaintiffs informed Seigal that they were in no rush; they were willing to wait as long as required to find property they could subdivide and leave for their children. Plaintiffs knew nothing about subdivision of property before Seigal informed them of requirements for subdivision in Hillsborough.[2]

In 1979, the sellers of the subject Black Mountain property listed it for sale with Coldwell Banker and listing agent Betty Kruse. The sellers advised Ms. Kruse that the lot size exceeded one acre. Therefore, on the multiple listing information sheet, Kruse indicated the lot size as "1 acre+." There were no obvious indications the sellers' representation was incorrect. In fact, at the time the property was placed on the market it was surrounded by a perimeter fence enclosing more than one acre.

---

[1]All further statutory references are to the Civil Code unless otherwise specified.

[2]Shaucat Salahutdin does not have a college degree and had owned only one other piece of property (a single-family residence) before purchasing the subject property. Jeannie Salahutdin has some difficulty with the English language.

Relying upon the multiple listing sheet, Seigal told plaintiffs the Black Mountain property met their requirements and was what they wanted. When plaintiffs reiterated the importance of subdivision, Seigal said that because the property was more than an acre, " 'you will have no problem subdividing in the future when you want to.' " During a visit to the property Seigal confirmed that the southern boundary line was demarcated by an old fence separating the land in question from contiguous property owned by the Alcantaras.

In fact, Seigal's representations were not true. The property was less than one acre in size and the fence did not demarcate the southern boundary. As a result, it is reasonably certain the property cannot be subdivided. Seigal did not inform the Salahutdins that his information was based simply upon the multiple listing sheet (MLS) and that he had done nothing more to determine the size of the property than "eyeball" it and accept the seller's agent's representations. He did not inform plaintiffs that he had not independently confirmed whether they could subdivide the property. Nor did he advise them that he had not conducted any investigation to determine if the fence lines he represented to be the boundary lines were so in fact. He did tell plaintiffs that the property "meets what you want. You can subdivide in the future."

In 1989, a dispute arose between plaintiffs and the Alcantaras when the Alacantaras tore down the old fence and erected a new one several feet to the north. A survey confirmed the old fence was not the true boundary line between the properties. The area between the old and new fence constituted .08 acres or 5,395 square feet. The Black Mountain property actually contained .998 acres. This litigation ensued.

### Statement of the Case

In a cause of action entitled "negligent misrepresentation," plaintiffs alleged that Coldwell Banker made false representations about the size of the property and concealed its failure to adequately investigate or disclose the true facts.

Experts for the parties testified that in 1979 if a real estate broker represented that a property could be subdivided, he or she had an obligation to investigate and determine if the property could in fact be subdivided; a broker who was aware that his client wanted to subdivide property and who did nothing more than "eyeball" the property to investigate the accuracy of the seller's representation that the lot size was sufficient to subdivide had not satisfied his duty of care to his client; a broker should not have confirmed the location of the boundary lines without the assistance of someone such as a surveyor, competent to do so; a broker was required to advise his or her

client whether the boundary line location had been verified by a surveyor; and if a broker knew the subdividability of the property was a material fact, and also knew the seller's representation that the property was more than one acre was merely the seller's belief, the agent had a duty to investigate to determine the accuracy of that representation.

The trial court found in favor of plaintiffs against Coldwell Banker, but found no liability against the seller's agent Kruse. In its tentative decision, the court found Seigal's actions fell below the standard of care for a realtor in 1979. The court further found Seigal had committed constructive fraud by representing to plaintiffs that the lot was greater than one acre in size, that it could be subdivided and that the fence marked the south boundary of the property without confirming the accuracy of such representations and without advising plaintiffs that he had done nothing to establish the accuracy of this information.

The trial court determined damages according to Civil Code section 3333, by comparing the value of the property plaintiffs received and the value of the property they would have received had Seigal's representations been true—the "benefit of the bargain" measure. The court accepted the testimony of plaintiffs' appraiser that as of November 1991 (the date nearest trial), the fair market value of comparable property that could be subdivided would be $1.1 million, and the value of the subject property with only the remote possibility that a variance could be obtained in the future to allow subdivision was $925,000.

Accordingly, judgment was entered on July 21, 1992, in favor of plaintiffs and against Coldwell Banker in the sum of $175,000 with interest thereon at the rate of 10 percent per annum from the date of entry of judgment until paid. A timely notice of appeal followed.

*Discussion*

I.

*Substantial Evidence of Constructive Fraud*

The record amply supports the finding that David Seigal breached his fiduciary duty to plaintiffs and committed constructive fraud. He knew the size of the property and its ability to be subdivided was critical to plaintiffs' decision to purchase it, yet misrepresented to plaintiffs that the property was more than one acre in size and that it could therefore be subdivided, confirmed that the south boundary of the property was marked

by the fence, and failed to disclose that he had done nothing to independently confirm the accuracy of this information.[3]

■ "In addition to the traditional liability for intentional or actual fraud, a fiduciary is liable to his principal for *constructive fraud* even though his conduct is not actually fraudulent. Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." (2 Miller & Starr, Cal. Real Estate (2d ed. 1989) Agency, § 3:20, p. 119, fn. omitted.)

"[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another *even though the conduct is not otherwise fraudulent.* Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud *even though there is no fraudulent intent.*" (2 Miller & Starr, *supra,* Agency, § 3:20 at pp. 120-121, fns. omitted.)

■ "A broker who is merely an innocent conduit of the seller's fraud may be innocent of actual fraud [citations], but in this situation the broker may be liable for negligence on a constructive fraud theory if he or she passes on the misstatements as true without personally investigating them. [Citations.]" (Cal. Real Property Remedies Practice (Cont.Ed.Bar 1982) § 3.36, p. 88.)

"[T]he broker has a fiduciary duty to investigate the material facts of the transaction, and he cannot accept information received from others as being true, and transmit it to the principal, without either verifying the information or disclosing to the principal that the information has not been verified. Because of the fiduciary obligations of the broker, the principal has a right to

---

[3]We note that liability here was not premised upon a breach of the broker's inspection and disclosure duties under Civil Code section 2079. That statute, which followed this court's articulation of the common law duty in *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90 [199 Cal.Rptr. 383, 46 A.L.R.4th 521], requires a reasonably competent and diligent "visual" inspection and disclosure to a prospective purchaser of "all facts materially affecting the value or desirability of the property that such an investigation would reveal." (§ 2079; see *Wilson* v. *Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 307-308 [18 Cal.Rptr.2d 779].) Absent "red flags" visible from a reasonably diligent visual inspection indicating the property was not the size represented, that duty would not encompass a duty to survey the property to make sure it was the size represented.

At issue here is not the inspection and disclosure duties of a seller's broker to the buyer described in *Easton, Wilson,* and section 2079. Rather, it is the broker's *fiduciary duty to his own client* to refrain from making representations of facts material to the client's decision to buy the property without advising the client that he is merely passing on information received from the seller without verifying its accuracy.

rely on the statements of the broker, and if the information is transmitted by the broker without verification and without qualification, the broker is liable to the principal for negligent misrepresentation." (2 Miller & Starr, *supra*, § 3.17, pp. 97-98, fns. omitted.)

██ As a fiduciary, Seigal had a duty to his clients to refrain from advising them that the parcel was more than an acre, that it could therefore be subdivided, and that the fence represented the southern boundary of the property where he did not know that to be the case and where he knew these facts were material to plaintiffs' decision to purchase the property. While he was not required to investigate the sellers' representations or the truth of the description contained in the multiple listing service sheet before showing the property to plaintiffs, Seigal was at least required to tell plaintiffs that he had not verified the information he was passing on to them; that he was simply relying upon the description provided by the sellers.

██ Appellant argues that Seigal's conduct was merely negligent and not fraudulent. However, the disclosure duty is a general duty imposed on the agent, and whether a breach of that duty constitutes negligence or fraud depends on the particular circumstances of each case. (2 Miller & Starr, *supra*, Agency, § 3:18, p. 105.) Consequently, there is no clear line establishing when a fiduciary's breach of the duty of care will be merely negligent and when it may be characterized as constructive fraud. However, a breach of a fiduciary duty *usually* constitutes constructive fraud. (*Id.*, § 3:17, at p. 96.) ██ The trial court determined that Seigal breached his fiduciary duty to plaintiffs by making affirmative statements as to the size, boundaries, and subdividability of the property, knowing these facts to be material to plaintiffs and by failing to disclose that he had not confirmed their accuracy. The trial court concluded that such breach constituted constructive fraud. Substantial evidence supports that determination.

## II.

### Measure of Damages

██ Appellant contends the court erred in awarding plaintiffs' "benefit of the bargain" damages under sections 1709[4] and 3333,[5] rather than their

---

[4]Section 1709 provides the measure for damages for deceit as follows: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers."

[5]Section 3333, the general tort damage measure provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expresslyprovided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

"out of pocket" loss under section 3343.[6] ■ The "benefit of the bargain" measure of damages is the difference between the actual value of what the plaintiff has received and that which he expected to receive. An "out of pocket" measure of damages is the difference between the actual value received and the actual value conveyed. (*Overgaard* v. *Johnson* (1977) 68 Cal.App.3d 821, 823 [137 Cal.Rptr. 412]; 2 Miller & Starr, *supra*, Agency, § 3:23, p. 134.) The cases are not consistent in their treatment of the measure of damages for breach of fiduciary duties.[7]

---

[6]Section 3343 provides:

"(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following:

"(1) Amounts actually and reasonably expended in reliance upon the fraud.

"(2) An amount which would compensate the defrauded party for loss of use and enjoyment of the property to the extent that any such loss was proximately caused by the fraud.

"(3) Where the defrauded party has been induced by reason of the fraud to sell or otherwise part with the property in question, an amount which will compensate him for profits or other gains which might reasonably have been earned by use of the property had he retained it.

"(4) Where the defrauded party has been induced by reason of the fraud to purchase or otherwise acquire the property in question, an amount which will compensate him for any loss of profits or other gains which were reasonably anticipated and would have been earned by him from the use or sale of the property had it possessed the characteristics fraudulently attributed to it by the party committing the fraud, provided that lost profits from the use or sale of the property shall be recoverable only if and only to the extent that all of the following apply:

"(i) The defrauded party acquired the property for the purpose of using or reselling it for a profit.

"(ii) The defrauded party reasonably relied on the fraud in entering into the transaction and in anticipating profits from the subsequent use or sale of the property.

"(iii) Any loss of profits for which damages are sought under this paragraph have been proximately caused by the fraud and the defrauded party's reliance on it.

"(b) Nothing in this section shall do either of the following:

"(1) Permit the defrauded person to recover any amount measured by the difference between the value of property as represented and the actual value thereof.

"(2) Deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

[7]Contributing to this confusion is the citation by the courts to statutes which do not always support the measure described. For example:

*Gagne* v. *Bertran* (1954) 43 Cal.2d 481 [275 P.2d 15], cites section 3333, rather than 3343 in support of the "out of pocket" standard in a case not involving a fiduciary.

*Ford* v. *Cournale* (1973) 36 Cal.App.3d 172 [111 Cal.Rptr. 334, 81 A.L.R.3d 704] and *Burkhouse* v. *Phillips* (1971) 18 Cal.App.3d 661 [96 Cal.Rptr. 197], involving fiduciaries, rely upon section 3343 to support the award of more expansive damages than available under the "out of pocket" standard.

*Simone* v. *McKee* (1956) 142 Cal.App.2d 307 [298 P.2d 667], also supports a broad measure of damages exceeding the "out of pocket" standard by reliance primarily upon section 3333, but stating section 3343 would also support such award.

In *Savage* v. *Mayer* (1949) 33 Cal.2d 548 [203 P.2d 9] and *Simone* v. *McKee, supra*, the damages awarded included disgorging of secret profits by the fiduciary. However, in *Walsh* v.

The consensus of the commentators is that section 3343 governs the measure of damages for fraud in the purchase, sale, or exchange of real property, but an exception is recognized where a fiduciary relationship existed between parties. In such case, sections 1709 and 3333 provide the measure of damages. (Johns, Cal. Damages Law and Proof (4th ed. 1993) §§ 8.1, 8.11, pp. 8-3, 8-22.1 to 8-23; 2 Miller & Starr, *supra*, Agency, § 3.23, p. 134; Cal. Attorney's Damages Guide (Cont.Ed.Bar Supp. Jan. 1994) § 2.33A, p. 80; Cal. Real Property Remedies Practice, *supra*, § 3.18, p. 77; Cal. Real Property Sales Transactions (Cont.Ed.Bar 1993 2d ed.) § 2.120, p. 178.) The cases support this distinction. (E.g., *Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 25-27 [147 Cal.Rptr. 655], disapproved on other grounds in *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 507 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; *Overgaard* v. *Johnson*, *supra*, 68 Cal.App.3d 821, 827; *Pepitone* v. *Russo* (1976) 64 Cal.App.3d 685, 688-689 [134 Cal.Rptr. 709]; *Walsh* v. *Hooker & Fay*, *supra*, 212 Cal.App.2d 450, 458-459; *Simone* v. *McKee*, *supra*, 142 Cal.App.2d 307, 315; *Lund* v. *Albrecht* (9th Cir. 1991) 936 F.2d 459; see *Savage* v. *Mayer*, *supra*, 33 Cal.2d 548, 550-555.)

Some commentators describe a split of authority in the cases regarding the proper measure of damages under section 3333 in cases of fiduciary fraud. (Cal. Attorney's Damages Guide, *supra*, § 2.33A, p. 80; Cal. Real Property Remedies Practice, *supra*, § 3.18, p. 77.) Clearly, some cases award what appear to be "benefit of the bargain" damages. (E.g., *Pepitone* v. *Russo*, *supra*, 64 Cal.App.3d 685; *Walsh* v. *Hooker & Fay*, *supra*, 212 Cal.App.2d 450; *Simone* v. *McKee*, *supra*, 142 Cal.App.2d 307; *Lund* v. *Albrecht*, *supra*, 936 F.2d 459; see *Stout* v. *Turney* (1978) 22 Cal.3d 718 [150 Cal.Rptr. 637, 586 P.2d 1228] [affirms award of broader remedy for fiduciary fraud as "consequential" or "additional" damages under § 3343].) Other courts have held that section 3333 limits the defrauded principal's recovery to the extent of the financial injury actually sustained and does not authorize the plaintiff to recover the benefit of his or her bargain. (*Walters* v. *Marler*, *supra*, 83 Cal.App.3d 1, 25-27; *Overgaard* v. *Johnson*, *supra*, 68 Cal.App.3d 821, 827; see Cal. Real Property Remedies Practice, *supra*, § 3.18, p. 77; Cal. Attorney's Damages Guide, *supra* (1994 Supp.) § 2.33A, p. 80.)

Other commentators, most notably Miller and Starr, *supra*, attempt to explain the division by distinguishing between actions by a principal against his agent for *fraud* in which the measure of damages for fiduciary fraud is the broader "benefit of the bargain" rule and actions by the principal against

---

*Hooker & Fay* (1963) 212 Cal.App.2d 450, 459 [28 Cal.Rptr. 16], this division maintained that the award of the broader measure of damages under section 3333 was not limited to the secret profit situation.

the agent for mere negligence, in which the narrower "out of pocket" measure is applied. (2 Miller & Starr, *supra*, § 3.23, pp. 134-135, 137-138; see also O'Leary, Limiting the Fiduciary Duty Exception to the Out-of-Pocket Rule (Cont.Ed.Bar April 1993) Real Property L.Rep., 145, 145-147.) That distinction leads Miller and Starr to explain *Overgaard* v. *Johnson*, *supra*, 68 Cal.App.3d 821[8] and *Christiansen* v. *Roddy* (1986) 186 Cal.App.3d 780 [231 Cal.Rptr. 72], which rely on section 3333 while applying the "out of pocket" loss rule, as decisions based on the *negligence* of the fiduciary and not upon actual or construc tive fraud. (2 Miller & Starr, *supra*, § 3.23, p. 138, fn. 27.)[9]

As Miller and Starr state, although the parties agreed section 3333 was the applicable statute as the action was against a fiduciary, the case was tried on a negligence theory against the broker.

This explanation ignores the overlap of the concepts of breach of a duty of care (negligence) and constructive fraud in actions against fiduciaries. Consequently, the result appears to turn on whether the theory of the case is described as negligent misrepresentation or constructive fraud—essentially a matter of pleading—rather than distinctions based upon the conduct of the agent.[10]

█ Recognizing a split of authority on the matter, we follow those cases adopting the broader measure of damages under sections 1709 and 3333, a course that is not only consonant with the position we have taken in the past but just. This division has consistently applied the broader measure

---

[8]*Overgaard* is similar to the instant action. There the seller engaged the broker to sell his property for not less than $250,000. The broker concluded a sale of the property for that price, but negligently failed to inform the buyer that the actual acreage of the property was less than specified. The buyer sued the seller and recovered $29,000 in damages measured by the difference between the sales price and the actual value of the property ($221,000). The seller then sued the broker to recover the $29,000. The court held that since the property was only worth $221,000, and this was the ultimate price received by the seller, he had not been damaged by the broker's negligence under the "out of pocket loss" rule. The seller was not able to recover the $29,000 from the broker. He was only able to recover the attorney fees incurred in defending against the buyer's suit and the commission paid which was allocable to the $29,000 price reduction. The court criticized the "out of pocket" loss rule, but found it was the rule applicable to a case based upon negligent misrepresentation by the fiduciary. (68 Cal.App.3d at p. 823.)

[9]One commentator suggests that failure to discover and disclose defects constitutes negligence, rather than a breach of fiduciary duty and should not be sufficient to qualify for "benefit of the bargain" damages. (O'Leary, *supra*, at p. 147.)

[10]Although we do not adopt the analysis distinguishing between professional negligence and constructive fraud by a fiduciary, we note the result would be the same in this case. As stated heretofore, substantial evidence supported the court's finding of constructive fraud by the fiduciary, warranting the broader "benefit of the bargain" measure even under the Miller and Starr analysis.

of damages for fiduciary fraud, refusing to limit damages to the "out of pocket" measure. (*Ford* v. *Cournale, supra*, 36 Cal.App.3d 172, 184; *Pepitone* v. *Russo, supra*, 64 Cal.App.3d 685; *Walsh* v. *Hooker & Fay, supra*, 212 Cal.App.2d 450.)

In *Walsh* v. *Hooker & Fay, supra*, 212 Cal.App.2d 450, plaintiff was induced to buy stock by the false representations made by a stockbroker. (*Id.*, at p. 451.) We held that the fiduciary relationship between plaintiff and defendant rendered it inappropriate to apply the "out of pocket rule" codified in section 3343. Following *Simone* v. *McKee, supra*, 142 Cal.App.2d 307, we applied the broader provisions of sections 3333 and 1709, affirming the award of the difference between the cost to plaintiff of the stock and the value of the stock as of the date of the discovery. (212 Cal.App.2d at pp. 451, 454, 460-463.) In so doing we emphasized that through all the cases " 'runs one common thread—a determination that *the faithless fiduciary shall make good the full amount of the loss of which his breach of faith is a cause.*' " (*Id.*, at p. 461, italics in original.) We refused to limit the measure of damages to the secret profit context or to limit recovery to the amount of any secret profit. (212 Cal.App.2d at p. 459.)

In *Ford* v. *Cournale, supra*, 36 Cal.App.3d 172, an elderly widow sued her broker for fraud and misrepresentation arising out of her purchase of an apartment complex recommended by her broker as suitable for her stated purpose of increasing her income. The jury entered a verdict for defendants and we reversed, holding the trial court had erred in refusing an instruction to the effect that in an action for fraud, it is proper to consider circumstances occurring after the fraudulent transaction, such as foreclosure, to calculate plaintiff's actual loss where plaintiff could not rescind. (*Id.*, at p. 184.) We refused to limit the "out of pocket" loss rule of section 3343 to the difference in value between market price and purchase price at the time of the purchase. (36 Cal.App.3d at p. 184.)

In *Pepitone* v. *Russo, supra*, 64 Cal.App.3d 685, plaintiff sued her broker for failing to disclose that a second deed of trust encumbering a motel she was acquiring had an acceleration clause. Consequently, appellant lost the motel at a foreclosure sale. We held that the broker owed a fiduciary obligation to plaintiff to disclose all material facts which might affect her decision with regard to the transaction. (*Id.*, at p. 688.) The faithless fiduciary "is obligated to make good the full amount of the loss of which his breach of faith is a cause [citations]." (*Ibid.*) We held the damages must, therefore, be measured pursuant to the broad provisions of sections 3333 and 1709 regulating compensation for torts in general and that the proper measure afforded by those sections "tends to give the injured party the benefit of

his bargain . . . ." (64 Cal.App.3d at p. 689, italics omitted.) "Under the benefit of the bargain doctrine we must consider the *loss* sustained by appellant rather than the value with which she parted [Citation.]" (*Id.*, at p. 689, italics in original.) In that case we calculated plaintiff's loss as the fair market value of the motel which was lost by reason of the breach and the expenditures that plaintiff incurred in trying to forestall foreclosure. (*Ibid.*) We also noted that plaintiff "fail[ed] to claim loss of future profits or other damages which in an appropriate case would also be recoverable under sections 3333 and 1709." (*Id.*, at p. 690, fn. 3.)

The remedy afforded by sections 1709 and 3333 aims at compensation for any and all the detriment proximately caused by the breach. Such compensation is appropriate under the facts of this case. We therefore conclude that the trial court did not err in adopting the broader measure of damages and in refusing to limit damages under section 3333 to plaintiffs' "out of pocket" loss.

## III.

### *Date of Measure*

■ Appellant contends damages should be measured at the date of the transaction and that the trial court erred in utilizing the date of discovery to calculate "benefit of the bargain" damages.

Unlike the "out of pocket" measure of damages, which are usually calculated at the time of the transaction, "benefit of the bargain" damages may appropriately be calculated as of the date of discovery of the fraud. (*Walsh* v. *Hooker & Fay, supra,* 212 Cal.App.2d 450, 460-462.) Such damages are calculated to require the faithless fiduciary to make good the "full amount of the loss." (*Pepitone* v. *Russo, supra,* 64 Cal.App.3d 685, 688; see *In re Estate of Anderson* (1983) 149 Cal.App.3d 336, 354-355 [196 Cal.Rptr. 782] [awarding appreciation damages and citing § 3333 as support].) Applying the difference as of the date of the transaction would defeat the goal of compensation for the entire loss where, as here, discovery of the fiduciary's constructive fraud did not occur until years after purchase of the property.

Nor does our recent opinion in *Safeco Ins. Co.* v. *J & D Painting* (1993) 17 Cal.App.4th 1199 [21 Cal.Rptr.2d 903], assist appellant. There we affirmed the long-standing rule that recovery for *negligent damage to real property* which damage could be repaired is limited to either the cost of repair or the diminution in value, but not both; and that a rule that would allow diminution in value to be awarded when it exceeds the cost of repair does not fit

within underlying tort doctrines. (*Id.*, at pp. 1204-1207.) That case did not address the measure of damages for fraud and breach of duty by a fiduciary.

The trial court did not err in refusing to calculate damages as of the date of the transaction.

The judgment is affirmed.

Smith, J., and Phelan, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 18, 1994.