[No. B153654. Second Dist., Div. Eight. July 7, 2003.]

TIM S. FRAGALE et al., Plaintiffs and Appellants, v.
EARLENE L. FAULKNER et al., Defendants and Respondents.

230

**COUNSEL**

C. Richard Dodson for Plaintiffs and Appellants.

James O. Vaughn for Defendant and Respondent Earlene L. Faulkner.

Ginder, Sunderland & Carlson, Mark C. Carlson and Sandee L. Chadwick for Defendant and Respondent Vince Messing.

**OPINION**

**BOLAND, J.—**

## SUMMARY

The measure of damages for a real estate broker's intentional misrepresentation to a buyer for whom he acts as agent is not limited to the out-of-pocket losses suffered by the buyer. Because the broker is a fiduciary, damages for intentional fraud may be measured by the broader benefit-of-the-bargain rule.

## FACTUAL AND PROCEDURAL BACKGROUND

Tim and Dinora Fragale purchased a home in Long Beach in 1998, and several months later filed this lawsuit against the seller, Earlene L. Faulkner. The complaint alleged two fraud causes of action, for intentional and negligent misrepresentation, in connection with the sale. The real estate broker, Vince Messing, who represented both parties in the transaction was subsequently added as a defendant.

The Fragales' complaint alleged defendants falsely represented that no structural defects or safety problems existed with respect to a laundry room and bonus room addition to the house which had been constructed without permits from the city. In fact, there were material construction defects in the addition, including defective interior walls, electrical wiring and other problems, which were hidden from view behind paneling installed by Faulkner's husband. The Fragales discovered the defects almost immediately after the purchase when Tim Fragale began to tear out the paneling in the course of remodeling.

The matter eventually proceeded to a jury trial. Before trial began, Messing filed, and the court granted, a motion in limine to preclude the Fragales from presenting any evidence not relevant to the fraud claims pled in the complaint, specifically, any evidence of breach of fiduciary duty by Messing.

At trial, the Fragales presented testimony from Messing, Faulkner, Tim Fragale and Lynn Sims, a construction management expert. The testimony showed Tim Fragale met Messing at an open house held by Messing at the Faulkner property in May 1998. At Messing's suggestion, the Fragales decided to use Messing as their agent; Messing offered to give the Fragales $3,300 of his commission. On May 26, 1998, the Fragales made a written offer to purchase the Faulkner property. After two counteroffers, the Fragales and Faulkner signed a purchase agreement. On June 4, 1998, the Fragales received a copy of the transfer disclosure statement prepared by Faulkner. On this form, Faulkner checked boxes indicating she was aware of significant defects/malfunctions in interior walls, ceilings, floors, driveways and sidewalks. However, she gave no explanation in response to the subsequent question asking for an explanation of any such defects. On Faulkner's transfer disclosure statement, she also checked boxes indicating she was aware of "[r]oom additions, structural modifications or other alterations or repairs" that were "made without necessary permits" and that were "not in compliance with building codes." In response to the subsequent question asking for an explanation, Faulkner wrote, "[l]aundry room, bonus room, MBR closet, no permits. Doorway can be closed if necessary from bonus room to BR." Messing did not instruct Faulkner to expand on any of these items. Messing had several discussions with Tim Fragale about the lack of permits, and explained "that they were built without someone going down to City Hall and pulling a building permit." The Fragales employed a house inspection company to inspect the house. The inspector told the Fragales he found no major defects, but listed a number of minor defects, including the lack of permits.

Tim Fragale was concerned about what was under the paneling, and on May 31, 1998 prepared a list of specific questions for Faulkner. Messing sent the questions by fax to Faulkner, who was then in Arkansas caring for an ill parent, and Faulkner returned handwritten answers by fax. One question asked Faulkner to describe the structural makeup of the walls in the rooms covered by paneling, and she responded, "plaster board." Another question asked, as to the "unpermitted closet and laundry room," was whether the current owners made the improvements; Faulkner's response was "No. I bought house without permits." In response to the question, "Are rooms basically built to code without permits," Faulkner responded, "Not sure." Faulkner responded "no" to the question whether there were "structural deficiencies that may be of safety concern that should be addressed upon taking possession" of the property. Tim Fragale testified he told Messing he

needed to know the condition of the walls behind the paneling, and Messing told him "that he contacted the Faulkners and they said the walls were fine. That it's basically just cosmetic, you know. You just take the paneling off and you paint the walls. ... And so he assured me that what was behind the paneling was just walls." Fragale testified he knew the bonus room and laundry room were not permitted, and he talked to Messing about what this meant and whether the rooms were built to code but just not permitted. Messing told him, "don't worry about it, Tim, they are fine. I mean, they are going to go for another 20 years. There is no problem with those rooms."[1]

When the Fragales took possession of the house in August 1998, Tim Fragale removed the paneling and found major alterations had been made that were concealed by the paneling, including removal of plasterboard, false ceilings and walls, dangling electrical wires and sockets, and so on. The Fragales's expert Sims testified the cost of repair, including demolition of the structurally defective bonus room, would be $80,000.[2]

At the close of the Fragales' case-in-chief, Messing and Faulkner moved for nonsuit. Messing's motion contended the Fragales offered no admissible evidence of diminution in the value of the property, as required under Civil Code section 3343. The Fragales moved to reopen their case to allow Tim Fragale to testify as to the value of the property, and also moved to amend the pleadings to state a cause of action for breach of fiduciary duty, based on evidence already presented.

The trial court ruled that diminution of value had not been established, and denied the Fragales' motion to reopen so that Fragale could testify to diminution in value. The court found the offer of proof with respect to Fragale's proposed testimony was insufficient, because an owner of property is not qualified to testify unless he has information about comparable sales. The court denied Messing's motion for nonsuit and allowed the case "to go to the jury on subparagraph 2 of BAJI, 12.56, namely, the cost of the repair."[3]

---

[1] On cross-examination, Fragale testified that Messing told him the addition was built to code. Counsel then read from Fragale's deposition, including the following: "Q. Okay. I want to be clear that you are telling me right now you do not recall an express statement from Vince in that regard [whether the additions were within building code]. ¶ A. No. I only recall conversations about that and how convincing he was, difference between being built to code or being permitted, and built to code, as part of that conversation, I was convinced that the property was built to code, just not permitted."

[2] Messing's expert testified that the cost of demolishing and rebuilding the addition would total $24,414.20, and that the code violations could be eliminated for much less if the addition were left as an outdoor room.

[3] On the damages issue, the court instructed the jury: "The amount of such award shall include, number one, the difference, if any, between the actual value of that with which the plaintiff parted and the actual value of that which was received. This is sometimes referred to

The trial court also denied the Fragales' motion to amend the complaint to add a cause of action for breach of fiduciary duty on the grounds it was untimely and prejudicial to the defense.

The jury returned special verdicts against Messing and Faulkner, finding each of them liable for intentional misrepresentation and negligent misrepresentation, and awarded damages against each on both causes of action.[4] Messing filed a motion for judgment notwithstanding the verdict, on the grounds the Fragales offered no evidence of an intentional misrepresentation, and no evidence of the value of the property at the time of transfer. The court granted the motion. The minute order stated there was "no evidence of what the market value of the property would have been had the true facts been known regarding the lack of permits and the lack of compliance with the building code," so that the Fragales failed to show any damages within the meaning of Civil Code section 3343. Judgment was entered in favor of Faulkner and Messing, and the Fragales filed a timely appeal from the judgment.

## DISCUSSION

The Fragales argue the trial court erred in concluding they failed to present appropriate evidence of damages caused by Messing's misrepresentation, and in refusing to reopen the case for Tim Fragale's testimony as to the value of the property. The Fragales are correct on the first point, but not on the second.

1. *The measure of damages.*

The Fragales' principal contention is the trial court erred in relying on Civil Code section 3343 to find they failed to show any damages resulting from Messing's intentional misrepresentation. The Fragales are correct. Messing was agent for the Fragales as well as Faulkner in the transaction and therefore a fiduciary. ■ The damages for fraud by a fiduciary are measured under Civil Code section 3333, rather than section 3343. While there is a split of authority on the point, we conclude the measure of damages for a fiduciary's intentional misrepresentation is not confined to actual or out-of-pocket losses.

We first describe the principles applicable to fraud damages, and then turn to the circumstances in this case. Several points are well settled:

---

as the out-of-pocket loss. ... Number 2, in addition to out-of-pocket loss, if any, plaintiff is entitled to recover any additional damage arising from the particular transaction, including an amount which could compensate the plaintiff for loss of use and enjoyment of the property to the extent that any such loss is caused by the fraud."

[4] On the intentional misrepresentation claim against Messing, the jury found the total amount of all damages suffered was $19,000; the same question on the negligent misrepresentation claim against Messing elicited an answer of $12,000. The same questions as to Faulkner elicited answers of $8,000 in each case.

— ■ There are two measures of damages for fraud: out-of-pocket and benefit-of-the-bargain. The out-of-pocket measure restores a plaintiff to the financial position he enjoyed prior to the fraudulent transaction, awarding the difference in actual value between what the plaintiff gave and what he received. The benefit-of-the-bargain measure places a defrauded plaintiff in the position he would have enjoyed had the false representation been true, awarding him the difference in value between what he actually received and what he was fraudulently led to believe he would receive. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1240 [44 Cal.Rptr.2d 352, 900 P.2d 601] (*Alliance Mortgage*).)

— ■ "In fraud cases involving the 'purchase, sale or exchange of property,' the Legislature has expressly provided that the 'out-of-pocket' rather than the 'benefit-of-the-bargain' measure of damages should apply." (*Alliance Mortgage, supra*, 10 Cal.4th at p. 1240.) Civil Code section 3343 provides the exclusive measure of damages for fraud in such cases. "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received … ." (Civ. Code, § 3343, subd. (a).)[5]

— ■ Civil Code section 3343 does not apply, however, "when a victim is defrauded by its fiduciaries." (*Alliance Mortgage, supra*, 10 Cal.4th at p. 1241.) Instead, in the case of fraud by a fiduciary, "the 'broader' measure of damages provided by sections 1709 and 3333 applies." (*Ibid.*, fns. omitted.) Civil Code section 3333 is the general tort damage measure, permitting compensation "for all the detriment proximately caused" by the breach of an obligation not arising from contract;[6] Civil Code section 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

— ■ In the case of a negligent misrepresentation by a fiduciary, "a plaintiff is only entitled to its actual or 'out-of-pocket' losses suffered because

---

[5] The defrauded person is also entitled to recover "any additional damage arising from the particular transaction, including any of the following: [¶] (1) Amounts actually and reasonably expended in reliance upon the fraud. [¶] (2) An amount which would compensate the defrauded party for loss of use and enjoyment of the property to the extent that any such loss was proximately caused by the fraud … ." (Civ. Code, § 3343, subd. (a) (1)–(4).) Section 3343 does not permit the defrauded person to recover "any amount measured by the difference between the value of property as represented and the actual value thereof." (*Id.*, subd. (b)(1).)

[6] Civil Code section 3333 states: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

of [the] fiduciary's negligent misrepresentation under section 3333." (*Alliance Mortgage, supra*, 10 Cal.4th at pp. 1249–1250.)

—The Supreme Court has not decided whether "the measure of damages under section 3333 might be greater for a fiduciary's *intentional* misrepresentation … ." (*Alliance Mortgage, supra*, 10 Cal.4th at p. 1250.)

Two points are clear from these principles. ■ Since no fiduciary relationship existed between Faulkner and the Fragales, their damages against Faulkner are measured exclusively under Civil Code section 3343. The Fragales make no argument to the contrary. Because they produced no evidence at trial of the actual value of the property they received, they failed to establish an essential element of their causes of action against Faulkner. (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1543 [50 Cal.Rptr.2d 395] [judgment of nonsuit affirmed where purchasers "offered no evidence of what the market value of the house would have been had the true facts been known regarding the lack of permits and the lack of compliance with building codes"].) The result is the same with respect to the Fragales' claim of negligent misrepresentation against Messing. As the Supreme Court stated in *Alliance Mortgage, supra*, 10 Cal.4th at pages 1249–1250, a plaintiff is entitled only to its out-of-pocket losses suffered because of a fiduciary's negligent misrepresentation.

The result is different on the Fragales' claim against Messing for intentional misrepresentation. Joining those courts that have adopted the broader measure of damages for fiduciary fraud, we conclude that damages are not limited to out-of-pocket losses. The result is consonant with the principle that " ' "the faithless fiduciary shall make good the full amount of the loss of which his breach of faith is a cause." ' " (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 567(*Salahutdin*), italics omitted [discussing cases].)

We acknowledge that the authorities are not uniform on whether a measure of damages other than out-of-pocket losses may be applied in the case of an intentional misrepresentation by a fiduciary. Since *Alliance Mortgage*, one court has concluded that out-of-pocket loss is the appropriate measure of damages for intentional fraud by a fiduciary. (*Hensley v. McSweeney* (2001) 90 Cal.App.4th 1081, 1086 [109 Cal.Rptr.2d 489] (*Hensley*).) In *Hensley*, the Fifth District reversed a judgment finding an escrow agent liable for breach of fiduciary duty, fraud by intentional misrepresentation and fraud by false promise, concluding the trial court erroneously instructed the jury with the benefit-of-the-bargain rather than the out-of-pocket measure of damages for the tort causes of action. "In the absence of any contrary authority from the California Supreme Court" (*ibid.*), the *Hensley* court declined to depart from its long-standing decision in *Overgaard v. Johnson* (1977) 68 Cal.App.3d 821 [137 Cal.Rptr. 412] (*Overgaard*). In *Overgaard*, the Fifth District applied the out-of-pocket rule in

a case of negligent misrepresentation by a fiduciary. (*Overgaard, supra*, 68 Cal.App.3d at pp. 823–828.) *Hensley* did not discuss the propriety of distinguishing between intentional and negligent misrepresentations by a fiduciary.[7]

The preferable view is that damages for fraud by a fiduciary should not be limited to out-of-pocket losses. As stated in *Salahutdin*, "the remedy afforded by sections 1709 and 3333 aims at compensation for any and all the detriment proximately caused by the breach."[8] (*Salahutdin, supra*, 24 Cal.App.4th at p. 568.) Commentators likewise state that, while there is a conflict in the decisions, the benefit-of-the-bargain rule applies to an agent's fraud. One commentator explains this result flows from the joint application of Civil Code sections 1709 and 3333 in fraud cases:

[T]he courts have carved a special exception to the out-of-pocket-loss rule in cases where the principal's action against the agent is based on the agent's *fraud* on the principal. The measure of damages for the principal's action against his or her agent who is in a fiduciary capacity is measured by the joint application of two principles: 'For the breach of an obligation not arising from contract, the measure of damages … is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.' [Civ. Code, § 3333.] 'One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.' [Civ. Code, § 1709.] [¶] In an action by a principal against an agent arising from the agent's fraud, these two principles have been interpreted as providing a measure of damages based on the broader 'benefit-of-the-bargain' rule because a fiduciary should be responsible to compensate his or her principal for the full amount of the

---

[7] The Fifth District's *Overgaard* decision, on which *Hensley* relied, invited the Supreme Court's consideration of the damages issue in the context of a fiduciary's negligent misrepresentation, indicating that "[t]he present [out-of-pocket] rule appears inequitable in this case on several grounds." (*Overgaard, supra*, 68 Cal.App.3d at p. 828.)

[8] *Salahutdin* predated the statement in *Alliance Mortgage* that only out-of-pocket losses may be recovered in the case of a fiduciary's negligent misrepresentation. (*Alliance Mortage, supra*, 10 Cal.4th at pp. 1249–1250.) *Salahutdin* was tried on a theory of negligent misrepresentation. The trial court found the real estate agent committed constructive fraud, not actual fraud, by making false representations to the buyer that the property was more than one acre in size and could be subdivided when, in fact, the property was less than an acre and could not be subdivided. (*Salahutdin, supra*, 24 Cal.App.4th at p. 558.) The opinion noted a fiduciary is liable to his principal for constructive fraud even though his conduct is not actually fraudulent; "[w]hile [the broker] was not required to investigate the sellers' representations …, [he] was at least required to tell [buyers] that he had not verified the information he was passing on to them; that he was simply relying upon the description provided by the sellers." (*Id.* at pp. 562, 563.) The opinion concluded the trial court correctly refused to limit damages under Civil Code section 3333 to plaintiffs' out-of-pocket loss, instead determining damages by the benefit-of-the-bargain measure, comparing the value of plaintiffs' property with the value of comparable property that could be subdivided. (*Salahutdin, supra*, at pp. 561, 568.)

loss caused by his or her breach of duty." (2 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 3.33, pp. 190–191, fns. omitted.)

■ We agree with this approach, and conclude the measure of damages in a case of intentional misrepresentation by a fiduciary is not limited to out-of-pocket losses.[9] Therefore, the trial court was not required to penalize the Fragales for failing to establish the out-of-pocket loss they sustained—the difference between the amount they paid for the house and what it was worth—as a result of Messing's intentional misrepresentation.

The Fragales and Messing both presented evidence of the cost of repair, and the jury's award was presumably based on that evidence. The award effectively places the Fragales in the position they would have enjoyed if Messing's false representation had been true; it enables them to place the property in the condition which they believed existed at the time of purchase. While awarding the cost of repair effectively affords the Fragales the benefit of their bargain, it also is an equitable measure of damages under the circumstances because it compensates the Fragales for the "detriment proximately caused" by Messing's misrepresentation, as permitted under Civil Code section 3333. Indeed, any significant difference between the Fragales' out-of-pocket loss—which is the difference between the amount they paid and the value of the non-code-compliant house they received—and the cost of repair is unlikely. Accordingly, the trial court erred in entering judgment notwithstanding the verdict on the claim against Messing for intentional misrepresentation.[10]

---

[9] Messing argues the Fragales should not be allowed to rely on the jury's verdict for intentional misrepresentation to "bootstrap" a claim for breach of fiduciary duty. In our view, the appropriate measure of damages does not depend on whether the Fragales asserted a cause of action for breach of fiduciary duty. It was undisputed, and Messing himself testified, that Messing was a licensed real estate broker and represented both Faulkner and the Fragales in the transaction. Messing was thus the Fragales' agent, and necessarily a fiduciary. ■ (See 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 41, p. 53 ["[a]n agent is a *fiduciary*. His obligation of diligent and faithful service is the same as that of a trustee"].) Even though no breach of fiduciary duty cause of action was pled, the evidence demonstrated that the fraud was committed by a fiduciary.

[10] Messing also argues no evidence was presented from which a reasonable jury could conclude Messing made any intentional misrepresentations. We disagree. At the least, there was testimony from which the jury could conclude, as it did, that Messing made a representation recklessly without knowing whether it was true or false. For example, Messing testified that he discussed with Faulkner "whether or not there were any conditions existing on the property that were not built to code," that the discussion referred to the laundry room and bonus room that were built without a permit, and that "there were things about those rooms that were not to code." Messing further testified to his own observations of the rooms, and that "the ceiling was barely above head height, and although I really don't know what the code is for ceiling height, I'm sure it couldn't have met it. I'm sure that it was substandard or different. It was a red flag to me." Messing nonetheless assured Tim Fragale—according to Fragale's testimony, which the jury apparently chose to believe—that the addition was built to code, just

## 2. *The motion to reopen.*

The Fragales also contend the trial court should have allowed them to reopen the case-in-chief to enable Tim Fragale to testify as to the value of the property they received in the transaction. They claim his testimony would have supported an award against Faulkner. We see no error.

When the court asked for an offer of proof with respect to Fragale's proposed testimony, counsel submitted that under the Evidence Code, the value of property may be shown by the opinion of the owner. (Evid. Code, § 813, subd. (a).) Further, counsel stated: "[T]his owner bought a house he believed in a certain condition. The house in fact was not in that condition when he got in and found out what the house—what the condition was. And he did know because he lives in the neighborhood, generally knows what houses go for in this neighborhood. It was a lesser value, and he is entitled to testify to that, Your Honor."

After a recess, counsel further stated: "In the period of time he's been in the property, he's visited many homes in that area and open houses. He's gotten brochures. He's—there's only four different models, in fact, and he's compared these to his own house and has an opinion as to the value of his own house as to comparable sales. [¶] Obviously, he's not an appraiser. He wasn't doing an appraisal. But he has visited properties, he has looked at brochures, he's looked at sales, and he has an opinion."

We see no basis for disturbing the trial court's ruling. The point to be proven was "what the market value of the house would have been had the true facts been known regarding the lack of permits and the lack of compliance with building codes." (*Saunders v. Taylor, supra,* 42 Cal.App.4th at p. 1543.) Counsel's offer of proof provides no foundation for an opinion from Fragale on that point. The offer of proof shows only that, at some time after the Fragales purchased the house in August 1998 and before the trial in February 2001, Fragale obtained information on the value of comparable houses in the neighborhood. However, even ignoring the time factor, the offer of proof suggests no basis for testimony on the pertinent point: the effect on

---

not permitted. From this a reasonable jury could conclude, in accordance with the court's instructions, that Messing "must have known that the representation was false when made or must have made the representation recklessly without knowing whether it was true or false … ."

market value of the code violations and structural defects.[11] While Evidence Code section 813 permits opinion testimony from the owner on the value of property, the opinion "is limited to such an opinion as is based on matter perceived by or personally known to the witness … that is of a type that reasonably may be relied upon by an expert in forming an opinion as to the value of property … ." (Evid. Code, § 814.) No such basis was provided for an opinion on the market value of the house as affected by the code violations and structural defects. (See *Contra Costa Water District v. Bar-C Properties* (1992) 5 Cal.App.4th 652, 660–661 [7 Cal.Rptr.2d 91] [rejecting "the maxim that an owner is always qualified to testify to the value of his own property"; the right of an owner to testify is not absolute, and an owner is bound by the same rules of admissibility as any other witness in stating an opinion as to the value of property].) The trial court did not err on this point.

## DISPOSITION

The judgment is affirmed, except insofar as the trial court entered judgment notwithstanding the verdict on the Fragales' claim of intentional misrepresentation against Messing. In that respect, the judgment is reversed and the cause is remanded to the trial court with directions to enter judgment in accordance with the jury's special verdict finding the Fragales suffered damages of $19,000 as a result of Messing's intentional misrepresentation. Faulkner is to recover her costs from the Fragales, and the Fragales are to recover their costs from Messing.

Cooper, P. J., and Rubin, J., concurred.

---

[11] "If the property was worth less than [plaintiffs] paid for it, defendant is liable for the difference. On the other hand, if the lots were worth what plaintiffs paid for them, plaintiffs were not damaged by their purchase, for even though they would not have bought the lots had they known the truth, they nevertheless received property as valuable as that with which they parted." (*Gagne v. Bertran* (1954) 43 Cal.2d 481, 490–491 [275 P.2d 15].)