Filed 11/21/16

# IN THE SUPREME COURT OF CALIFORNIA

HIROSHI HORIIKE,                        )

                                         )

        Plaintiff and Appellant,     )

                                         )               S218734

        v.                       )

                                         )       Ct.App. 2/5 B246606

COLDWELL BANKER RESIDENTIAL  )
BROKERAGE COMPANY et al.,     )

                                         )       Los Angeles County

        Defendants and Respondents.  )    Super. Ct. No. SC110477

_____)

Under California law, a real estate broker may act as a "dual agent" for both the seller and the buyer in a real property transaction, provided both parties consent to the arrangement after full disclosure.  (Civ. Code, §§ 2079.14, 2079.16.)  To that end, the law requires brokers to disclose whether they are acting as dual agents and to inform the parties that a broker acting as a dual agent owes fiduciary duties to both buyer and seller.  (*Id.*, § 2079.16.)  In carrying out its duties, the broker may act either directly or through one or more "associate licensees" — typically salespeople who operate under the broker's license and function under the broker's supervision.  (*Id.*, § 2079.13, subds. (b) & (e).)  The governing statute provides that when an associate licensee owes a duty to any party in a real property transaction, "that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions."  (*Id.*, subd. (b).)

In this case, a seller retained Coldwell Banker Residential Brokerage Company (Coldwell Banker), a real estate brokerage firm, to list a luxury residence for sale. When a buyer, also represented by Coldwell Banker, made an offer to purchase the property, the parties agreed that Coldwell Banker, acting through its associate licensees, would function as a dual agent in the transaction. After the sale was complete, the buyer discovered a significant discrepancy between the square footage of the residence's living area as set out in its building permit and as represented in the marketing materials for the property. He filed suit, alleging, among other things, breach of fiduciary duty by Coldwell Banker and by the associate licensee who marketed the property and negotiated its sale on behalf of the seller. The trial court concluded that the associate licensee had no fiduciary duty to the buyer, granted nonsuit on the cause of action against the associate licensee, and instructed the jury that it could find Coldwell Banker liable only if another agent of Coldwell Banker had breached his or her fiduciary duty to the buyer. The jury found in favor of Coldwell Banker. The Court of Appeal reversed.

As this case comes to us, it presents a single, narrow question concerning the associate licensee's duties to the buyer in the transaction: whether the associate licensee owed to the buyer a duty to learn and disclose all information materially affecting the value or desirability of the property, including the discrepancy between the square footage of the residence's living area as advertised and as reflected in publicly recorded documents. It is undisputed that Coldwell Banker owed such a duty to the buyer. We now conclude that the associate licensee, who functioned on Coldwell Banker's behalf in the real property transaction, owed to the buyer an "equivalent" duty of disclosure under Civil Code section 2079.13, subdivision (b). We accordingly affirm the judgment of the Court of Appeal.

2

## I.

## A.

Dual agency, as it is practiced today, is a relatively recent development in the real estate industry. For most of the past century, the real estate agents involved in a brokered transaction generally served as exclusive agents of the seller. (See generally Morales Olazábal, *Redefining Realtor Relationships and Responsibilities: The Failure of State Regulatory Responses* (2003) 40 Harv. J. on Legis. 65, 65–66, 69–71, 74–75 (hereafter Morales Olazábal); Comment, *Dual Agency in Residential Real Estate Brokerage: Conflict of Interest and Interests in Conflict* (1982) 12 Golden Gate U. L.Rev. 379, 388–389.) As is true today, sellers typically retained a listing broker that would post their properties on a multiple listing service (MLS), where the properties would be noticed by other "cooperating" agents who would show the properties to potential buyers. (Morales Olazábal, *supra*, at p. 66.) Until the early 1990s, standard MLS agreements made cooperating agents the subagents of the sellers. (*Id*. at pp. 73–75.) It was common practice for associate licensees, acting as agents of the listing broker, and for other cooperating brokers and their associate licensees, acting as sellers' subagents, to assist buyers in the purchase of property. (See, e.g., *Grand v. Griesinger* (1958) 160 Cal.App.2d 397, 406 (*Grand*) [salesperson is agent of broker]; *Kruse v. Miller* (1956) 143 Cal.App.2d 656, 660 [cooperating broker acted as "subagent" of seller].)

Judicial decisions had long made clear that real estate agents owed sellers " 'the same obligation of undivided service and loyalty that [the law] imposes on a trustee in favor of his beneficiary.' " (*Batson v. Strehlow* (1968) 68 Cal.2d 662, 674, quoting *Langford v. Thomas* (1926) 200 Cal. 192, 196.) It was not, however, always clear to buyers that the brokers involved in a transaction and their associate licensees were all acting as exclusive agents of the seller. California courts often

3

held that listing agents and cooperating brokers were undisclosed dual agents, who owed fiduciary duties to buyers as well as sellers, based on their conduct in a transaction. (See, e.g., *McConnell v. Cowan* (1955) 44 Cal.2d 805, 813 [real estate agent who negotiated lease was dual agent rather than mere middleman]; *Montoya v. McLeod* (1985) 176 Cal.App.3d 57, 64 [licensed salesperson's conduct rendered her dual agent]; *Walters v. Marler* (1978) 83 Cal.App.3d 1, 26 [cooperating broker and its associate licensee owed fiduciary duty to buyer]; *Anderson v. Thacher* (1946) 76 Cal.App.2d 50, 67 [cooperating broker was agent of buyer based on conduct in transaction].) Courts recognized rescission as a remedy for undisclosed dual agency, even when the plaintiff was not injured, impairing the interest in finality of completed sales. (See, e.g., *Vice v. Thacker* (1947) 30 Cal.2d 84, 90 ["[W]here an agent has assumed to act in a double capacity, a principal who has no knowledge of such dual representation . . . may void the transaction."].)

In the early 1980s, the agency relationships involved in these transactions became the subject of increasing attention nationwide. (See generally Federal Trade Com., L.A. Regional Off., The Residential Real Estate Brokerage Industry (Dec. 1983) vol. 1, pp. 23–24, 180–188.) In 1986, California became the first of many states to enact legislation addressing the practice of dual agency. (Morales Olazábal, *supra*, 40 Harv. J. on Legis. at p. 112, fn. 250.) While other statutes later passed in other states took different approaches to the issue, including by creating new forms of agency representation previously unknown at common law (see *id.* at pp. 74–91), the focus of the California statute is disclosure: The law permits dual agency, provided that real estate agents both inform their clients of the agency relationships involved and obtain the clients' consent. (Civ. Code, §§ 2079.14, 2079.16, 2079.17.) Among other things, the disclosure statute requires an agent that markets a property for a seller (the "listing agent") to

4

disclose whether it is "acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller." (*Id.*, § 2079.17, subd. (b).) An agent that obtains a buyer for a property (the "selling agent") must disclose whether it is "acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller." (*Id.*, subd. (a).) The statute also requires real estate agents to provide their clients with a form entitled "Disclosure Regarding Real Estate Agency Relationship." (*Id.*, § 2079.16; see *id.*, § 2079.14.) The form, the contents of which are prescribed by the statute, states that "[a] real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer," and that, "[i]n a dual agency situation," the agent owes "[a] fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer." (*Id.*, § 2079.16.) By contrast, the disclosure form says that an agent representing only one of the two parties (i.e., an exclusive agent of the buyer or the seller), does not owe fiduciary duties to the other party to the transaction, though it does owe duties of "[d]iligent exercise of reasonable skill and care in performance of the agent's duties" and "honest and fair dealing and good faith" to both parties. (*Ibid.*)

The statute specifies certain limitations on the duties of a dual agent: A dual agent may not "disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller," nor may the dual agent "disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer." (Civ. Code, § 2079.21.) This provision does not, however, "alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price." (*Ibid.*)

5

For purposes of these provisions, the statute defines the term "agent" to include a real estate broker licensed under the Real Estate Law (Bus. & Prof. Code, § 10000 et seq.), and "under whose license a listing is executed or an offer to purchase is obtained." (Civ. Code, § 2079.13, subd. (a).) Under the Real Estate Law, only licensed real estate brokers may act as agents in real property transactions. (Bus. & Prof. Code, §§ 10130, 10131.) Real estate licenses may be issued to corporate brokerage firms, such as Coldwell Banker, in which case the corporation is the agent. (*Id.*, §§ 10158, 10159, 10211; 2 Miller & Starr, Cal. Real Estate (4th ed. 2016) § 4:17, p. 4-61 (hereafter Miller & Starr).) The statute specifies that an agent may act as a dual agent "either directly or through an associate licensee." (Civ. Code, § 2079.13, subd. (e).) The term "associate licensee" is defined as "a person who is licensed as a real estate broker or salesperson . . . and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee." (*Id.*, subd. (b).) The statute further states: "The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions." (*Ibid.*)

**B.**

This case arises from the sale of a luxury residence in Malibu by a family trust. The trust engaged Chris Cortazzo, a salesperson in Coldwell Banker's Malibu West office, to sell the property. As Cortazzo prepared to list the property, he obtained public record information from the tax assessor's office, which stated that the property's living area was 9,434 square feet, and a copy of the residence's

6

building permit, which described a single-family residence of 9,224 square feet, a guest house of 746 square feet, a garage of 1,080 square feet, and a basement of unspecified area. When Cortazzo listed the property on the MLS in September 2006, however, the listing stated that the property "offers approximately 15,000 square feet of living areas." Cortazzo also prepared and distributed a flyer making the same representation about the property's square footage.

In early 2007, a couple working with another Coldwell Banker salesperson made an offer to purchase the property. By a handwritten note in the disclosures he prepared, Cortazzo informed the couple that Coldwell Banker did not "guarantee or warrant" the square footage of the residence, and he advised them "to hire a qualified specialist to verify the square footage." When the couple requested documentation of the square footage, Cortazzo gave them, through the salesperson, a letter from the architect of the residence stating that "[t]he size of the house, as defined by the current Malibu building department ordinance is approximately 15,000 square feet." In a cover note, however, Cortazzo again cautioned them that they should "hire a qualified specialist to verify the square footage." The couple requested an extension of time to inspect the property, which the trust refused to grant. In March, the couple canceled the transaction.

Meanwhile, plaintiff Hiroshi Horiike, a resident of Hong Kong, had been working for several years with Chizuko Namba, a salesperson in Coldwell Banker's Beverly Hills office, to find a residential property to buy. In November 2007, Namba arranged for Cortazzo to show the Malibu property to Horiike and accompanied Horiike to the showing. At the showing, Cortazzo gave Horiike the marketing flyer stating the property offered "approximately 15,000 sq. ft. of living areas," and an MLS listing printout that did not specify the square footage and contained a small-print advisement that "Broker/Agent does not guarantee the accuracy of the square footage." After viewing the property, Horiike decided to

7

make an offer to purchase it.  Namba sent Horiike's offer to Cortazzo.  Horiike and the trust eventually agreed on a sale price.

Before completing the purchase, Horiike signed the two agency disclosure forms required by California law.  (See Civ. Code, §§ 2079.14, 2079.16, 2079.17.)  The first form, entitled "Confirmation Real Estate Agency Relationships," specified that Coldwell Banker was both the "listing agent" and the "selling agent," and indicated that Coldwell Banker was "the agent of [¶] . . . both the Buyer and Seller."[1]  The second form, entitled "Disclosure Regarding Real Estate Agency Relationships," contained the statutorily required explanation that "[a] real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction," in which case, the agent owes "[a] fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer."  Cortazzo signed both forms on behalf of Coldwell Banker.[2]

Horiike also signed a third disclosure form, entitled "Disclosure and Consent for Representation of More Than One Buyer or Seller."  That form explained:  "A real estate broker, whether a corporation, partnership or sole proprietorship, ('Broker') may represent more than one buyer or seller provided

---

[1]     A "listing agent" is a broker that enters into a listing agreement with owners of real property to act as their agent in selling property.  (Civ. Code, § 2079.13, subds. (f) & (g).)  A "selling agent" is a broker that finds buyers for real property and presents offers to sellers.  (*Id.*, subd. (*o*).)  In a given transaction, the listing agent may also function as the selling agent (as Coldwell Banker did in this case) or it may act in cooperation with an outside broker who is working with the buyer.

[2]     Namba also signed the confirmation form on behalf of Coldwell Banker as the selling agent, and she provided Horiike a separate agency relationship disclosure form, which she signed as an associate licensee of Coldwell Banker.

the Broker has made a disclosure and the principals have given their consent. This multiple representation can occur through an individual licensed as a broker or through different associate licensees acting for the Broker. The associate licensees may be working out of the same or different office locations. [¶] . . . [¶] Buyer and Seller understand that broker may represent more than one buyer or seller and even both buyer and seller on the same transaction." The form described the broker's disclosure duties "[i]n the event of dual agency" as follows: "Seller and Buyer agree that: (a) Broker, without the prior written consent of the Buyer, will not disclose to Seller that the Buyer is willing to pay a price greater than the offered price; (b) Broker, without the prior written consent of the Seller, will not disclose to the Buyer that Seller is willing to sell property at a price less than the listing price; and (c) other than as set forth in (a) and (b) above, a Dual Agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties." The form further specified that, absent a confidentiality agreement, the seller or listing agent could "disclose the existence, terms, or conditions of Buyer's offer." Cortazzo also signed this form on behalf of Coldwell Banker.

Cortazzo did not provide Horiike a handwritten note advising him to hire a qualified specialist to verify the square footage of the home, as he had done in the disclosures he provided to the potential buyers in the transaction that was canceled in March 2007. Cortazzo did, however, provide Horiike, through Namba, a copy of the residence's building permit and a form advisory stating: "[O]nly an appraiser . . . can reliably confirm square footage . . . . Representations . . . in a Multiple Listing Service, advertisements, and from property tax assessor records are often approximations, or based on inaccurate or incomplete records. . . . Brokers have not verified any such representations. Brokers do not have expertise in this area. If Buyer wants information about the exact square footage . . .

9

Broker recommends that Buyer hire an appraiser or licensed surveyor . . . ."
Horiike also signed an advisory stating that "Broker . . . [s]hall not be responsible
for verifying square footage." Horiike purchased the property without further
investigating its square footage.

In 2009, when preparing to do work on the property, Horiike reviewed the
building permit and noticed that it appeared to contradict Cortazzo's
representation that the property offered approximately 15,000 square feet of living
space. Horiike filed suit against Cortazzo and Coldwell Banker, alleging, among
other things, that both defendants had breached their fiduciary duties toward
Horiike by "either deliberately misrepresenting the square footage of the living
area of the [residence] and failing to act with the utmost care, integrity and
honesty as to Horiike and or simply failing to determine the accuracy of the
representations they were making as to the living area square footage."

The case was tried to a jury. After the close of Horiike's case, Cortazzo
moved for nonsuit on Horiike's cause of action for breach of fiduciary duty. The
trial court granted the motion, ruling that Cortazzo exclusively represented the
seller in the transaction and therefore did not owe a fiduciary duty to Horiike.
Because Horiike had also stipulated that he did not seek recovery for breach of
fiduciary duty based on Namba's conduct, the trial court instructed the jury that, in
order to find Coldwell Banker liable for breach of fiduciary duty, the jury had to
find that an agent of Coldwell Banker other than Cortazzo or Namba had breached
a fiduciary duty to Horiike. The jury returned a special verdict in favor of
Coldwell Banker on all causes of action.

The Court of Appeal reversed the judgment on the breach of fiduciary duty
claim against Cortazzo and Coldwell Banker. The court concluded that Cortazzo,
as a salesperson working under Coldwell Banker's license, owed a duty to Horiike
"equivalent" to the duty owed to him by Coldwell Banker. (Civ. Code, § 2079.13,

10

subd. (b).)  The court reasoned that because Coldwell Banker acted as the dual agent of the buyer and seller in the transaction, as confirmed on the disclosure forms provided to Horiike, it owed "a fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with either the seller or the buyer."  Observing that Cortazzo executed the forms on behalf of Coldwell Banker as its associate licensee, the court held that Cortazzo owed the same duty to Horiike.  The court concluded that a properly instructed jury could find that "Cortazzo breached his fiduciary duty by failing to communicate all of the material information he knew about the square footage," including the apparent contradiction between Cortazzo's representations and the square footage measurements in public record documents.  The court remanded the case for a new trial on Horiike's breach of fiduciary duty claim.

We granted defendants' petition for review.

**II.**

The sole question before us is whether Cortazzo, as an associate licensee representing Coldwell Banker in the sale of the Malibu residence, owed a duty to Horiike to take certain measures to inform him about the residence's square footage:  specifically, to investigate and disclose all facts materially affecting the residence's value or desirability, regardless of whether such facts could also have been discovered by Horiike or Namba through the exercise of diligent attention and observation.  Defendants acknowledge that Coldwell Banker was a dual agent, and, as such, owed this fiduciary duty of disclosure to both Horiike and the trust.  But defendants contend that Cortazzo himself exclusively represented the trust and therefore could not have breached any fiduciary duty toward Horiike — who, they assert, was represented exclusively by Namba.

The relationship between Horiike and Cortazzo was governed by a set of agreements whose contents either were specified by the agency relationship

11

disclosure statute or elaborated on the statutory provisions.  (See Civ. Code, §§ 2079.14, 2079.16, 2079.17.)  Like both parties, therefore, we begin by examining the text of the statute.  Horiike's submission rests primarily on the final sentence of Civil Code section 2079.13, subdivision (b):  "When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions."  Horiike contends that the provision extends to salespeople the same — or "equivalent" — fiduciary duties as those owed by the brokerages for which they work.  Defendants counter that, read in context, the "equivalent" duty language merely expands on the point made in the preceding sentence:  "The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent."  (*Id.*, § 2079.13, subd. (b).)  Defendants read the sentence following merely as clarifying that the agent's responsibility includes assuming whatever duties its salespeople owe to the parties in a transaction.  In other words, defendants read the "equivalent" language to call for imputing the duties of the salesperson to the brokerage, but not the other way around.

We believe Horiike has the better reading.  By describing an associate licensee's duty in a real property transaction as "equivalent to" the duty of the "broker for whom the associate licensee functions," the provision specifies that when an associate licensee represents a brokerage in a real property transaction, his or her duties are the same as those of the brokerage.  If the Legislature had meant to impute the salesperson's duties to the broker, not vice versa, it could have drafted the provision to focus on the broker's duty rather than the associate licensee's — by providing, for instance, "When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property

12

transaction, the broker for whom the associate licensee functions owes an equivalent duty to that party."

It is, however, unsurprising that the Legislature focused on the duties of the associate licensee relative to that of the broker, rather than the other way around. Under the law, it is solely on the broker's behalf that an associate licensee is empowered to act in a real estate transaction. An associate licensee, by definition, is either "licensed under a broker" or has contracted "to act as the broker's agent in connection with acts requiring a real estate license," and "function[s] under the broker's supervision." (Civ. Code, § 2079.13, subd. (b).) When the disclosure statute was enacted, as now, the Real Estate Law provided that a salesperson "is licensed only to act as an agent for, on behalf of, and in place of, the real estate broker under whom he [or she] is licensed." (*People v. Asuncion* (1984) 152 Cal.App.3d 422, 425; see also Bus. & Prof. Code, §§ 10137 [unlawful for a salesperson to "be employed by or accept compensation from any person other than the broker under whom he or she is at the time licensed"], 10160 [broker retains possession of salesperson's license].) Brokers, in turn, are required to supervise the activities of their salespersons and may be disciplined and held liable based on salespersons' conduct within the scope of their employment. (Civ. Code, § 2338; see also Bus. & Prof. Code, § 10177, subd. (h) [broker must "exercise reasonable supervision over the activities of his or her salespersons"]; Cal. Code Regs., tit. 10, § 2725 [defining "reasonable supervision"]; *Grand*, *supra*, 160 Cal.App.2d at p. 406 ["The entire statutory scheme requires the broker actively to conduct his brokerage business and to supervise the activities of his salesmen."]; 2 Miller & Starr, *supra*, § 4:31, p. 4-95.)

Under these provisions, an associate licensee has no power to act except as the representative of his or her broker. This means that an associate licensee does not have an independent agency relationship with the clients of his or her broker, but rather an

13

agency relationship that is derived from the agency relationship between the broker and the client.  Against that backdrop, Civil Code section 2079.13, subdivision (b), is most naturally read to mean that the associate licensee owes the parties to that transaction the same duties as the broker on whose behalf he or she acts.

The legislative history of Civil Code section 2079.13 is consistent with this conclusion.  As originally introduced, the disclosure bill made clear that broker–agents owe fiduciary duties to their clients, but made no mention of the duties of associate licensees.  The then-Department of Real Estate opposed the bill as introduced on the ground that it appeared to limit a salesperson's duty to a buyer or seller to one of "fair and honest dealing," a "much lesser standard" than the fiduciary duties owed by a broker.  (Dept. of Real Estate, Analysis of Assem. Bill No. 3349 (1985–1986 Reg. Sess.) Mar. 20, 1986, p. 3.)  The department requested an amendment to clarify that, although associate licensees are not themselves agents of buyers or sellers, they "owe parties to real estate transactions the same duties as their employing brokers."  (*Ibid*.)  The Assembly subsequently amended the bill's definition of "associate licensee" to state:  "An associate licensee owes a duty to each party in a real property transaction which is eq[u]ivalent to the duty owed each party by the broker under whom the associate licensee is licensed."  (Assem. Bill No. 3349 (1985–1986 Reg. Sess.) as amended Apr. 28, 1986, § 3.)  An Assembly Judiciary Committee bill analysis recounts that this language was added in response to the department's request, with the intent of clarifying that "the fiduciary duties of real estate broker agents to buyers and sellers also apply to real estate salespersons."  (Assem. Judiciary Com., Republican Analysis of Assem. Bill No. 3349 (1985–1986 Reg. Sess.) May 8, 1986.)  The Senate later amended the bill to reflect the language currently appearing in Civil Code section 2079.13, subdivision (b).  (Assem. Bill No. 3349 (1985–1986 Reg. Sess.) as amended June 17, 1986, § 2.)

14

Defendants point to statements in the legislative record that suggest that the law had been understood as designed simply to ensure that agency relationships are disclosed, rather than to modify them. (See, e.g., Cal. Assn. of Realtors, sponsor of Assem. Bill No. 3349 (1985–1986 Reg. Sess.), statement in support, June 20, 1986, p. 3 ["The bill does not mandate sellers, buyers or real estate brokers to accept or function in any particular agency relationship, but maintains the functions now available and the constraints now applicable under California law . . . BUT WITH A COMPREHENSIVE DISCLOSURE to the parties, of those options and constraints."].) They therefore focus on certain background principles of agency law that, they claim, are inconsistent with Horiike's reading of section 2079.13, subdivision (b). In particular, they point to the general rule that an "agent cannot be vicariously liable for the wrongful acts of the principal" (2 Miller & Starr, *supra*, § 3:54, p. 3-280) and the rule that "[a] mere agent of an agent is not responsible as such to the principal of the latter" (Civ. Code, § 2022). This is not, however, a case of vicarious liability. Horiike seeks to hold Cortazzo accountable for *his* breach of duty, and principles of agency law do not immunize Cortazzo from liability for his own conduct. (See 2 Miller & Starr, *supra*, § 3:54, p. 3-279 ["The agent is only liable to third persons for his or her own wrongful acts or omissions."]; Rest.3d Agency, § 7.01 ["Only an agent's own tortious conduct subjects the agent to liability . . . ."].) Defendants' argument boils down to a disagreement about what kind of duty Cortazzo owed Horiike. There is no dispute that Cortazzo had a nonfiduciary duty to Horiike in the transaction. (See Civ. Code, § 2079.) There is also no dispute that Coldwell Banker, on whose behalf Cortazzo functioned as an associate licensee, owed a fiduciary duty to Horiike. The disclosure statute and Real Estate Law make clear that an associate licensee who "owes a duty to any principal, or to any buyer or seller who is not a principal, in a real estate transaction" (Civ. Code, § 2079.13, subd. (b)) stands in

15

the shoes of the brokerage and assumes the broker's duties.[3]  Accordingly, when Coldwell Banker agreed to act as a dual agent for both Horiike and the trust in the transaction for the sale of the Malibu residence, Cortazzo, as an associate licensee of Coldwell Banker in the transaction, assumed equivalent duties to Horiike.

As a practical matter, it is unclear how a corporate brokerage like Coldwell Banker would fulfill its fiduciary disclosure duties as a dual agent under the rule that defendants advance.  This case perhaps illustrates the point:  It is undisputed that Coldwell Banker owed a fiduciary duty to Horiike, including a duty to learn and disclose all information materially affecting the value or desirability of the residence.  That duty extended to information known only to Cortazzo, since a broker is presumed to be aware of the facts known to its salespersons.  (See Civ. Code, § 2332 ["As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."]; 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 150, p. 195

---

[3]  In support of their view that Cortazzo owed no fiduciary duties to Horiike, defendants rely on the New Mexico Supreme Court's decision in *Moser v. Bertram* (N.M. 1993) 858 P.2d 854.  In that case a prospective real estate buyer argued that the seller's salesperson had a fiduciary duty to him that "derive[d] from" the buyer's salesperson's fiduciary duty, because both salespersons worked for the same brokerage firm.  (See *id.* at pp. 854–855.)  The court rejected that contention, characterizing the issue as one of vicarious liability and holding that "the fiduciary duties of one real estate salesperson are not attributable to another salesperson operating under the same qualifying broker unless one salesperson is at fault in appointing, supervising, or cooperating with the other."  (*Id.* at p. 856, citing Rest.2d Agency, § 358.)  In so concluding, the court emphasized that the case did "not involve an issue of dual agency."  (*Ibid.*)  The court did not consider whether the seller's salesperson had a duty to the buyer under a statute comparable to Civil Code section 2079.13, subdivision (b), or under contractual provisions akin to the agreements at issue in this case.

["An agent is under a duty to inform the principal of matters in connection with the agency that the principal would desire to know about. [Citation.] Even if the agent fails to do so, the principal will in most cases be charged with that notice."].) It is true, as defendants observe, that Namba owed Horiike a fiduciary duty to learn and disclose material information. But defendants do not explain how Namba's purported failure to discharge her fiduciary duty would excuse Coldwell Banker from its duty to disclose material information that may have been known only to Cortazzo, who was also its agent in the transaction. A broker cannot discharge a duty to disclose information known only to its associate licensee except through the licensee himself. (Cf. *Black v. Bank of America* (1994) 30 Cal.App.4th 1, 6 ["A corporation is, of course, a legal fiction that cannot act at all except through its employees and agents."].)

Defendants observe that agency requires consent, and they contend that charging associate licensees with carrying out their brokers' fiduciary duties in a dual agency transaction imposes unconsented-to dual agency. In their view, Cortazzo and Horiike never agreed to an agency relationship, so only Namba and not Cortazzo could owe fiduciary duties to Horiike. But Cortazzo and Horiike did agree to an agency relationship: Cortazzo, as a salesperson acting under Coldwell Banker's corporate license, could not represent any party in the transaction independently of Coldwell Banker, the broker under which he was licensed. (See Bus. & Prof. Code, § 10137.) And Coldwell Banker opted to represent Horiike as a dual agent rather than act as the exclusive representative of the trust. (See Civ. Code, §§ 2079.17, subd. (c) [listing agent may opt to represent either "the seller exclusively" or "both the buyer and seller"], 2079.22 [listing agent acting as selling agent to find buyer for property may choose to represent seller exclusively].) Coldwell Banker's agreement with Horiike, which Cortazzo signed as Coldwell Banker's representative, specified that Coldwell Banker was acting as

17

a dual agent "through different associate licensees acting for the Broker" who "may be working out of the same or different office locations," identified Cortazzo as one of its associate licensees, and explained that a dual agent owes fiduciary duties to both parties, including the duty to disclose known facts materially affecting the value or desirability of the property. Cortazzo was thus charged with carrying out Coldwell Banker's fiduciary duty to learn and disclose all material information affecting the value or desirability of the property.

**III.**

Defendants argue that charging associate licensees with the same duties as their brokerages would force salespeople "into dual agency with buyers and sellers whose interests inherently conflict," requiring them to breach their clients' confidence and harm their clients' interests. While we do not gainsay defendants' concerns about the potential for conflicts of interest in the dual agency context, the narrow disclosure duty at issue in this case creates no such conflict. The fiduciary duty of disclosure that Horiike alleges Cortazzo breached is, in fact, strikingly similar to the nonfiduciary duty of disclosure that Cortazzo would have owed Horiike in any event. Even in the absence of a fiduciary duty to the buyer, listing agents are required to disclose to prospective purchasers all facts materially affecting the value or desirability of a property that a reasonable visual inspection would reveal. (Civ. Code, § 2079; see also *id.*, § 1102.6.) And regardless of whether a listing agent also represents the buyer, it is required to disclose to the buyer all known facts materially affecting the value or desirability of a property that are not known to or reasonably discoverable by the buyer. (*Id.*, § 2079.16; see also *Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 735 ["It is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation

18

of the buyer, the seller is under a duty to disclose them to the buyer."]; *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 444 [same].) Our Courts of Appeal have held, to take a few examples, that a listing agent had a duty to disclose to the seller the fact that a murder had occurred on the property (*Reed v. King* (1983) 145 Cal.App.3d 261, 265–268), that "a neighborhood contains an overtly hostile family who delights in tormenting their neighbors with unexpected noises or unending parties" (*Alexander v. McKnight* (1992) 7 Cal.App.4th 973, 977), that a lot was filled with debris thereafter covered over (*Clauser v. Taylor* (1941) 44 Cal.App.2d 453, 453–454), that the house sold was constructed on filled land (*Burkett v. J. A. Thompson & Son* (1957) 150 Cal.App.2d 523, 525–527), and that improvements were added without a building permit and in violation of zoning regulations (*Barder v. McClung* (1949) 93 Cal.App.2d 692, 695–697) or in violation of building codes (*Curran v. Heslop* (1953) 115 Cal.App.2d 476, 481–483).

The primary difference between the disclosure obligations of an exclusive representative of a seller and a dual agent representing the seller and the buyer is the dual agent's duty to learn and disclose facts material to the property's price or desirability, including those facts that might reasonably be discovered by the buyer. (*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 414–416; see also *Salahutdin v. Valley of California, Inc*. (1994) 24 Cal.App.4th 555, 563 [buyer's agent has duty to verify the accuracy of information transmitted to the buyer or explain that it is unverified].) Horiike contends that Cortazzo breached his fiduciary duty by making representations to Horiike about the square footage of the residence's living area that he did not know to be true, failing to disclose the discrepancy between these representations and the information about the residence's square footage contained in publicly recorded documents, and neglecting to specifically advise Horiike to hire a specialist to verify the square footage, as he advised the couple who made the earlier offer on the property. We express no view about whether, as a factual matter,

19

Cortazzo breached this duty. For present purposes, the critical point is only that to disclose such information, or to alert Horiike that his representations were unverified, would not have required Cortazzo to reveal any confidential information he had obtained from the trust, nor would it otherwise have compromised his ability to fulfill his fiduciary obligations toward the trust.

In other cases, a plaintiff's allegations may raise more difficult questions about the scope of a real estate salesperson's fiduciary duties when functioning as a dual agent in a transaction. Defendants argue that if salespeople owe precisely the same duties as their employers, then buyers and sellers would not have the benefit of the "undivided loyalty of an exclusive salesperson," and, worse, "[s]alespersons would have a duty to harm their original client by disclosing to the other side confidential information about the client's motivations or the salesperson's beliefs." These are significant concerns, but they are also concerns inherent in dual agency, whether at the salesperson or the broker level. Although the Legislature was certainly aware of these concerns when it enacted the disclosure statute, it opted not to address them directly. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 1034 (1985–1986 Reg. Sess.) as amended Aug. 12, 1986, p. 3) [disclosure statute not intended to address "the fundamental problem in dual agency relationships — potential and sometimes unavoidable conflicts of interest" but is "simply a 'disclosure' bill intended to inform the buyers and sellers in a real estate transaction of the possible agency relationships and the duties owed by a realtor under a particular arrangement"]; accord, Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 3349 (1985–1986 Reg. Sess.) as amended July 8, 1986, p. 2.) In approving the practice of consented-to dual agency, however, the Legislature undoubtedly understood that the dual agent's loyalty must

20

extend to both parties, and that it cannot bear any fiduciary duty to one party that requires it to breach its duty to the other party. (See Civ. Code, § 2079.16 ["[i]n a dual agency situation," the agent owes "[a] fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer"].)

To the extent there is any uncertainty about the scope of a dual agent's fiduciary duties in other contexts, the Legislature certainly could enact defendants' preferred solution to the problem by, for example, adopting legislation to uncouple associate licensees' duties from those of the brokers they represent. (See, e.g., Alaska Stat., § 08.88.640; Conn. Gen. Stat., § 20-325i; 225 Ill. Comp. Stat. 454/15-50.) But as presently written, the statute provides no basis for distinguishing between a broker's duty to learn of and disclose all facts materially affecting the value or desirability of the property and its associate licensee's duty to do the same.

## IV.

Because Cortazzo, as an agent of Coldwell Banker in the transaction, owed Horiike a duty to learn and disclose all facts materially affecting the value or desirability of the property, the trial court erred in granting nonsuit on Horiike's breach of fiduciary duty claim against Cortazzo and in instructing the jury that it could not find Coldwell Banker liable for breach of fiduciary duty based on Cortazzo's conduct. Accordingly, we affirm the judgment of the Court of Appeal.

KRUGER, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.

21

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Horiike v. Coldwell Banker Residential Brokerage Company
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 225 Cal.App.4th 427
**Rehearing Granted**

_____

**Opinion No.** S218734
**Date Filed:** November 21, 2016
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** John H. Reid

_____

**Counsel:**

Horvitz & Levy, Mitchell C. Tilner, Frederic D. Cohen; The Law Offices of David W. Macey, David W. Macey, Lindsay M. Alter; Higgs, Fletcher & Mack and Victor N. Pippins, Jr., for Plaintiff and Appellant.

Degani & Galston, Katharine J. Galston and Orly Degani for Hughes Marino., Inc., as Amicus Curiae on behalf of Plaintiff and Appellant.

Barnes & Thornburg and L. Rachel Lerman for National Association of Exclusive Buyer Agents as Amicus Curiae on behalf of Plaintiff and Appellant.

Arbogast Law and David M. Arbogast for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Arnold & Porter, Jerome B. Falk, Jr., and Steven L. Mayer for CBRE, Inc., Cushman & Wakefield of California, Inc., and NAIOP SoCal as Amici Curiae on behalf of Plaintiff and Appellant.

Klinedinst, Neil Gunny; Greines, Martin, Stein & Richland, Kent L. Richland, Edward L. Xanders and David E. Hackett for Defendants and Respondents.

June Babiracki Barlow, Neil Kalin and Jenny Li for California Association of Realtors as Amicus Curiae on behalf of Defendants and Respondents.

Reed Smith, Margaret M. Grignon and Tillman J. Breckenridge for Jones Lang LaSalle as Amicus Curiae on behalf of Defendants and Respondents.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Frederic D. Cohen
Horvitz & Levy
3601 West Olive Avenue, 8th Floor
Burbank, CA  91505-4681
(818) 995-0800

Edward L. Xanders
Greines, Martin, Stein & Richland
5900 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90036
(310) 859-7811