Filed 2/1/23  Yoon v. Kim CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| DON YOON et al., | B312654 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC585932) |
| v. | |
| SUNNY MISUN KIM et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Frederick W. Lee Law Firm and Sam M. Muriella for Plaintiffs and Appellants.

David S. Kim & Associates, David S. Kim and Todd A. Fuson for Defendants and Respondents.

Don Yoon (Yoon) and Eunice Yoon (appellants) appeal from a judgment entered after a bench trial on appellants' claims against Young Ja Choi (Choi), LA1 Realty and Sunny Misun Kim (Kim)[1] arising out of appellants' purchase of commercial real property. Appellants argue that the trial court improperly calculated damages against Choi and that the trial court erroneously denied their motion to conform to proof to add a cause of action for constructive fraud against respondents. We affirm the judgment.

## BACKGROUND

The following background facts is taken from the trial court's written statement of decision in this matter.

Appellants purchased commercial real property in Mojave, California from Choi for $3.6 million. The property consisted of four buildings and 13 rental units. Choi and her husband decided to sell the property and hired Kim, a licensed real estate broker at LA1 Realty, to assist with the sale.

After posting a brochure online, Kim was contacted by Yoon, who expressed an interest in buying the property. Yoon, who resides in San Jose, California was not assisted by a real estate broker and made an offer to buy the property without a personal viewing. After some negotiation, the parties agreed on the $3.6 million purchase price and signed a purchase agreement in July 2014.

---

[1] Because Choi has not filed a brief in this appeal, LA1 Realty and Kim are collectively referred to as "respondents" in this opinion.

Kim, who acted in the capacity of a dual agent with respect to this transaction, had the parties sign a dual agent disclosure form, in which they acknowledged being informed of the dual agency and the rights and obligations inherent thereto.

Initially, Choi's husband, Hwa Scob Choi, had the primary role with respect to the transaction. He died suddenly, and thereafter Choi's son, Byoung Kuk Choi, assisted in the sale.[2]

During the escrow period, pursuant to the purchase agreement, various documents were produced to Yoon, including a rent roll on Kim's stationary, estoppel certificates, copies of leases, and receipts that were allegedly for cash payments of rent. Kim provided Yoon with the rent roll and understood the information would be significant to him and that it was important that this documentation be accurate. The rent roll contained the following disclaimer: "Information deemed reliable, but not guaranteed." Kim also prepared a document entitled "Income & Expense, as of July 2014." Like the rent roll, the income and expense document specifically stated, "Information deemed reliable but not guaranteed." This document was prepared solely based on information provided by Choi.

The rental units central to this matter were a thrift shop and a restaurant. Miguel Arvizu was the lessee for both of these units. The rental agreement for the restaurant listed a monthly rental of $3,800, and the rental agreement for the thrift shop called for $2,000 per month. With respect to the restaurant, Arvizu typically paid somewhere between $300 and $800 per month, although he had free rent for January through April

---

[2] Byoung Kuk Choi was named as a defendant below. Default was entered against him in May 2019.

3

2014. He rarely paid anything close to $2,000 monthly for the thrift shop.

Arvizu had a long relationship with the late Mr. Choi, who wanted Arvizu to succeed. They had entered into an oral side-agreement, whereby Arvizu would perform maintenance in common areas and would be credited against the rent for the value of his time. This oral side-agreement was not disclosed to Yoon. Despite the existence of the side agreement, Arvizu signed estoppel certificates for each tenancy, which represented that there were no other agreements than the written lease. The estoppel certificates were also signed by Choi, who initially claimed to have very little knowledge of anything having to do with the property. Ultimately she admitted knowledge of the side-agreement.

Fabricated rental receipts for Arvizu's two leases were given to Yoon during the escrow. The trial court found that the receipts were most likely fabricated by Byoung Kuk Choi acting on behalf of his mother. The rent rolls that were provided to Kim, which she copied on her letterhead and gave to Yoon, also contained false information. They showed monthly payments of $4,500 per month for the restaurant, and $2,700 per month for the thrift shop. Thus, Yoon was led to believe that the rents from the commercial property would be $7,200 per month more than they turned out to be.

Appellants purchased the property in reliance on the information provided by Choi. Fraudulent misrepresentations were made by and on behalf of Choi, which caused financial loss to appellants. The misrepresentations in the estoppel certificates were made by Choi herself, who had knowledge that the representation of no agreement other than the written lease was

4

false, and nevertheless signed the documents. The other misrepresentations were made by her son, to whom she delegated certain responsibilities, for which she was responsible.

In October 2014, escrow closed for the purchase of the property in the amount of $3.6 million. From that transaction, a commission in the amount of $216,000 was paid to respondents.

Arvizu paid no rent to appellants for either the restaurant or the thrift shop. After the close of the sale appellants became aware material misrepresentations had been made to them during the transaction with regard to the unpaid rents.

## PROCEDURAL HISTORY

### Pleadings

On June 23, 2015, appellants filed a complaint against Choi and respondents alleging breach of contract, breach of the covenant of good faith and fair dealing, fraud—nondisclosure of material fact, fraud—misrepresentation, negligent misrepresentation, breach of fiduciary duty, constructive fraud, and professional negligence.

After various challenges to the complaint, appellants filed a first amended complaint on December 14, 2015. Following further challenges, appellants filed the operative second amended complaint (SAC) on January 20, 2017.

On August 11, 2017, the trial court sustained respondents' demurrer to the SAC without leave to amend as to the third cause of action for fraud—nondisclosure of material fact, the fourth cause of action for fraud—misrepresentation, the fifth cause of action for negligent misrepresentation, and the seventh cause of action for constructive fraud.

5

On August 24, 2017, respondents filed their answer to the SAC. On March 5, 2019, Choi filed her answer to the SAC.

**Trial**

A seven-day bench trial commenced on February 4, 2020. Appellants called Paul Russell, an appraiser, as a witness. Russell testified that the fair market value for the property on October 8, 2014, was $2.49 million. Appellants also called Lawrence Jacobson, a licensed real estate broker and attorney, as an expert witness. Jacobson testified that respondents did not meet the standard of care in representing appellants in the transaction. Jacobson opined that in preparing estoppel certificates, the broker should go through the tenants. Instead respondents went through the seller. In addition, Jacobson testified that respondents lacked familiarity with the area and lacked understanding of the responsibilities of a commercial real estate agent in valuing property.

During trial, appellants moved to amend their complaint to conform to proof and add a cause of action for constructive fraud against respondents, which the trial court denied in its written decision following trial.

**The court's decision**

On March 20, 2020, the trial court issued a tentative decision. On April 3, 2020, appellants filed objections to the tentative statement of decision and a request for hearing.

On July 21, 2020, the trial court entered its final statement of decision. The court found that appellants relied on the misrepresentations made by Choi, who had knowledge of their falsity. As to respondents, the trial court found insufficient evidence to prove appellants' claims against respondents and found on their behalf against appellants.

6

The court noted that appellants' expert, Jacobson, was unconvincing because he never addressed the scope of respondents' duties while acting as dual agents. Further, the court was not convinced of Jacobson's position that respondents were required to "look behind" the documents provided by the seller. The court knew of no authority that a broker is required to conduct an audit of the information supplied by the seller.

Further, the court found that Yoon did not exercise due diligence in determining the fair market value of the property. He made an offer to close on the asking price without having seen the property and did not consult with a real estate appraiser before investing in the property. The court found Kim was legally prohibited from advising appellants as to the price they should pay for the property, citing Civil Code section 2079.16,[3] which provides: "In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered."

In calculating damages against Choi, the court referred to the testimony of Russell, who "described how commercial property is considered 'stable' when 80% of the units are fairly rented." Russell considered the subject property, "as is," to be at

---

[3]     All further statutory references are to the Civil Code unless otherwise indicated.

7

64 percent occupancy.  Russell explained that it can take up to three years for a rental property to be stabilized.  Thus, the "'prospective upon stabilized' value as of October 2017" was $2.63 million.  The court therefore concluded that the property's "'cost to stabilization' was $110,000, which would represent [appellants'] damages, with one complication."

The court explained the "complication" as follows: "When Mr. Yoon became aware of the inadequate rent payments during the escrow period, [the parties] signed amended escrow instructions . . . whereby $41,000 was to be held back from escrow to account for unpaid rent.  [Appellants] received $31,000 from that sum, which should be deducted from the 'cost to stabilization' amount."  Thus, the court awarded appellants "$110,000 minus $31,000, or $78,900" against Choi.

The court noted that it had bifurcated the issue of punitive damages and set a hearing on the punitive damages phase of trial.

On March 17, 2021, the court entered judgment in favor of appellants and against Choi and Byoung Kuk Choi for compensatory damages in the amount of $78,900, punitive damages in the amount of $315,600, and prejudgment interest in the amount of $192,923.32 for a total award of $587,423.37.  Appellants were awarded nothing against respondents.

On May 13, 2021, appellants filed their notice of appeal from the judgment.

## DISCUSSION

### I.    Standards of review

Appellants raise two issues on appeal.  First, they argue that the trial court improperly calculated damages.  Second, they

argue the trial court erroneously denied their motion to amend the pleadings to conform to proof.

"An appellant's challenge to damages, depending upon its specific nature, may be subject to a substantial evidence, abuse of discretion, or de novo standard of review." (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 583.) "The question of whether 'a certain measure of damages is permissible given the legal right the defendant has breached, is a matter of law, subject to de novo review.'" (*Ibid.*) "But where the measure of damages is legally permissible, a trial court's choice of that measure, among other legally permissible measures of damages, is reviewed for abuse of discretion." (*Ibid.*)

"A trial court may allow the amendment of a pleading at any time up to and including trial." (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 736.) While such leave should ordinarily be liberally granted in the absence of prejudice to the opposing party, leave to amend a complaint is properly denied "if the proposed amendment . . . would not establish a basis for liability as a matter of law." (*Ibid.*) We review the record to determine whether substantial evidence supports the fact finder's determination that there was no liability under the proposed amendment to the pleading. (*Ibid.*)

## II.    Compensatory damages

Appellants argue that the trial court did not apply the proper measure of compensatory damages against Choi. Appellants argue that the court failed to provide any authority to justify the cost to stabilization basis for its damage calculation. Instead, appellants assert that the proper basis for calculating damages is found in section 3343, subdivision (a), which provides,

9

in part, that "[o]ne defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received . . . ." Appellants point out that they paid $3.6 million for the property, and the fair market value of the property on October 8, 2014, was $2.49 million. As a result, appellants argue, the proper amount of compensatory damages is $1.11 million.

We find the trial court's calculation of damages permissible and did not constitute an abuse of its discretion. First, we note section 3343, subdivision (a)(1), permits a court to take into consideration "[a]mounts actually *and reasonably* expended in reliance upon the fraud." (Italics added.) Here, as appellants admit, the trial court found that appellants' $1 million overpayment for the property "was not due to any misrepresentations by the seller or any act of Ms. Kim." Instead, appellants overpaid "because [they] didn't exercise diligence in determining the fair market value of the property." Appellants "made an offer close to the asking price without having seen the property, and didn't consult with anyone such as a real estate appraiser before determining whether to invest several million dollars in a piece of commercial real estate in the Mojave desert."

Appellants do not argue a lack of substantial evidence to support the trial court's factual conclusion that the cause of appellants' overpayment was their own lack of due diligence. Instead, appellants argue that their own due diligence is not relevant, citing *Seeger v. Odell* (1941) 18 Cal.2d 409, 414 (*Seeger*) for the proposition that the negligence of a party in discovering the falsity of a statement is not a defense to fraud. *Seeger* involved a real estate transaction induced by fraudulent

10

misrepresentations. The *Seeger* court noted the above proposition of law, asserting that "[n]egligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent." (*Ibid.*) Thus, "[t]he fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar his recovery . . . ." (*Id.* at pp. 414-415) Here, in contrast to *Seeger*, the failure of appellants in discovering Choi's false statements is not at issue. The court explicitly found that appellants did not overpay the full $1 million due to Choi's false statements. Instead, the trial court found that appellants overpaid due to their own failure to conduct adequate diligence.[4]

While the trial court did not award appellants the full $1 million overpayment, it awarded appellants damages for their losses fairly attributable to Choi's false statements. As set forth in its written order, the trial court endeavored to calculate the damages proximately caused by Choi's false statements. In doing so, the court relied on the testimony of appellants' expert witness, Russell.[5] Taking into consideration the state of the rental units

---

[4] The other two cases cited by appellants on this point are similarly distinguishable because they involve the buyer's failure to discover the falsity of the seller's statements. (*Piazzini v. Jessup* (1957) 153 Cal.App.2d 58, 61 ["plaintiff buyer 'has the right to rely on a vendor's representation as to the quantity of land'"]; see *Mills v. Hellinger* (1950) 100 Cal.App.2d 482, 487.)

[5] Appellants argue that the trial court erred because it failed to name a legal basis for its use of the "cost to stabilization" method of calculating damages. Appellants invited any such error by presenting Russell's testimony, on which the trial court relied. (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 329

11

at the time of appellants' purchase, Russell "came up with what [he] thought the value—or cash flow ought to be once it's stabilized, once it is properly managed . . . and how much cost or time it would take to get to a stabilized situation." Russell concluded that as to the property at issue, this cost would be $110,000. The trial court took this number from appellants' expert, and subtracted a set-off that appellants received in escrow for unpaid rent.

The court's calculation of compensatory damages was reasonable and supported by the record. No abuse of discretion occurred.

## III.  Constructive fraud

A fiduciary may be liable for constructive fraud even though his or her conduct is not actually fraudulent. (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 562 (*Salahutdin*).) The *Salahutdin* court explained:

> "'[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another *even though the conduct is not otherwise fraudulent*. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud.'" (*Ibid.*)

---

["'"Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal" on appeal.'"].)

The elements of a cause of action for fraud are (1) a fiduciary relationship, (2) nondisclosure (breach of fiduciary duty), (3) intent to deceive, and (4) reliance and resulting injury. (*Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498, 516, fn. 14.)

The trial court sustained respondents' demurrer without leave to amend as to appellants' constructive fraud cause of action against them, and denied appellants' motion to conform the pleadings to assert a cause of action for constructive fraud during trial.[6]

As the trial court noted, there are differences between the fiduciary obligations of an exclusive representative of the seller or buyer and a dual agent representing the seller and the buyer. (*Horiike v. Coldwell Banker Residential Brokerage Co.* (2016) 1 Cal.5th 1024, 1031 (*Horiike*).)[7] The primary difference is that

---

[6] As respondents point out, appellants are not clear on the precise trial court decision they are challenging on appeal. Because the matter proceeded to trial and all of the facts have been conclusively established, we analyze only the denial of appellants' motion to add a cause of action for constructive fraud during trial.

[7] In *Horiike*, the Supreme Court held that when an individual associate represents a brokerage in a real property transaction, his or her duties are the same as those of the brokerage. (*Horiike, supra*, 1 Cal.5th at p. 1036.) *Horiike* involved a dual agency where the buyer discovered a significant discrepancy between the square footage of the residence's living area and what was represented in the marketing materials. (*Id.* at pp. 1028-1029.) The high court acknowledged "the potential for conflicts of interest in the dual agency context," but declined to address this point further, as the issue in that case "create[d] no such conflict." (*Id.* at p. 1040.)

13

dual agents must "both inform their clients of the agency relationships involved and obtain the clients' consent." (*Horiike*, at p. 1030.) Section 2079.16 recognizes that an agent representing both the seller and the buyer has "[a] fiduciary duty of utmost care, integrity, honesty, and loyalty in the dealings with either Seller or the Buyer." (*Ibid*. ["AGENT REPRESENTING BOTH SELLER AND BUYER"].)[8]

While appellants are correct that dual agents have certain fiduciary obligations to both the buyer and the seller, those obligations do not include a duty to confirm the veracity of all

---

[8]     Respondents point out that section 2079, which requires a "real estate broker or salesperson . . . to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose . . . all facts materially affecting the value or desirability of the property," applies exclusively to sales of "residential real property improved with one to four dwelling units." (§ 2079, subd. (a); see *Smith v. Rickard* (1988) 205 Cal.App.3d 1354, 1360.) Thus, the obligations found in section 2079 do not apply to this commercial real estate transaction. However, respondents cite no authority that the disclosures set forth in section 2079.16 are inapplicable in a commercial transaction such as the one at issue in this case. Further, we note that the *Rickard* court expressly found that regardless of the limited application of section 2079, a buyer may still state a claim for breach of fiduciary duty against an agent or broker. (*Rickard, supra*, at p. 1363; see *Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 21 [concluding "the *fiduciary* duty of a broker, who contracts to exclusively represent a purchaser of real property to investigate for its client, is independent of the separate obligation imposed on a seller's broker to conduct a reasonable visual inspection of the marketed property for a buyer's protection, as announced in *Easton v. Strassburger* (1984) 152 Cal.App.3d 90 and incorporated into section 2079")

14

statements made by the seller.  Generally, a dual agent has the "duty to disclose all facts *known to the agent* materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties." (§ 2079.16, italics added.)[9]  The trial court found that the evidence in this matter did not support a finding that respondents had knowledge of the seller's false statements, and appellants have not brought a substantial evidence challenge to this finding on appeal.  Thus, the elements of nondisclosure and intent to deceive are not supported by the record.

Appellants attempt to prevail on the theory that respondents were bound to investigate Choi's representations regarding the rental income.  In support of this argument, they cite *Salahutdin, supra*, 24 Cal.App.4th 555.  In *Salahutdin*, the buyers worked closely with an agent from Coldwell Banker in order to find a property that satisfied their needs.  They informed their agent that they wanted to subdivide the property, and the agent explained to them that because they wanted to subdivide the property, they needed a property at least one acre in size. (*Id.* at p. 559.)  The plaintiffs "knew nothing about subdivision of property before [their agent] informed them" of these requirements.  (*Ibid.*)  The buyers were willing to wait for such a

---

[9]     As the trial court noted, there is a specific requirement that dual agents "may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price . . . ."  (§ 2079.16 ["AGENT REPRESENTING BOTH SELLER AND BUYER"].)

15

property. (*Ibid.*) When one came on for sale, the sellers advised their agent—also of Coldwell Banker—that the property was one acre in size. This representation turned out to be false. The buyer's agent misinformed the buyers that because the property was one acre, the buyers would have no problem subdividing it. (*Id.* at p. 560.) Without addressing the dual agency issue, the *Salahutdin* court found that substantial evidence of constructive fraud existed as against the buyers' agent.

*Salahutdin* does not assist appellants in this matter. The *Salahutdin* court expressly recognized that an agent is not required to investigate the truth of a sellers' representations. Instead, the court emphasized the agent's duty to inform the sellers that his statements were not based on his own verification: "While he was not required to investigate the sellers' representations or the truth of the description contained in the multiple listing service sheet before showing the property to plaintiffs, [the agent] was at least required to tell plaintiffs that he had not verified the information he was passing on to them . . . ." (*Salahutdin, supra*, 24 Cal.App.4th at p. 563.)[10] Here, respondents provided such a disclaimer, explicitly informing the buyer that the information they were passing on regarding the monthly rental income was "not guaranteed." Because respondents did not have an obligation to investigate the seller's statements and notified appellants that they had not verified the rental income information, respondents did not breach any

---

[10]     Similarly, in *Horiike, supra*, 1 Cal.5th at page 1041, the Supreme Court noted that the agent was required "to disclose such information [concerning square footage], or to alert Horiike that his representations were unverified."

16

obligation to appellants. In short, there was no legal basis for a claim of constructive fraud.[11]

*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399 (*Assilzadeh*), also cited by appellants, involved a lawsuit brought by a buyer against the seller, real estate broker, and broker's agent for failing to disclose in detail the specific defects alleged in a construction defect lawsuit that had been filed concerning the property. The buyer's real estate agent was employed by the brokerage hired by the seller, thus the agent and his employer acted in the capacity of dual agents. (*Id.* at p. 405.) The *Assilzadeh* court affirmed summary judgment in favor of the defendants, finding that "[t]heir duty was to disclose the existence of the lawsuit to put the buyer on notice of alleged defects, and they fulfilled that duty." (*Id.* at pp. 416-417.) Thus, the *Assilzadeh* court recognized that agents are not required to investigate every aspect of a transaction.

In doing so, the *Assilzadeh* court stated its belief that "a dual agent has fiduciary duties to both the buyer and seller." (*Assilzadeh, supra*, 82 Cal.App.4th at p. 414.) However, the court found the agents' duties to be limited to disclosure of what they *knew*. Because the existence of the lawsuit was disclosed, the

---

[11] Section 2079.16 also contains a warning to the buyers that "you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation." (*Ibid.* ["SELLER AND BUYER RESPONSIBILITIES"].) In a case such as this where the both the seller and the tenant were making deliberate, material misrepresentations regarding the payment of rent, it is difficult to charge either the buyer or the agent with having knowledge or the ability to observe the true facts, which the seller and the tenant were intentionally hiding.

17

agents satisfied their obligation to the client.  The agents were not "required to read and analyze the legal documents located in the court file." (*Id.* at p. 416.)  Once they informed the buyer of what they knew, "[a]t that point the buyer should have investigated further and, if necessary, should have hired an attorney for advice on the legal aspects of the lawsuit and settlement." (*Ibid.*)  Similarly, here, respondents informed appellants of rental income information that the seller provided.  They also informed appellants that their representations regarding the rental income of the property were "not guaranteed."  At that point, appellants could have investigated further.

Finally, *Jorgensen v. Beach 'N' Bay Realty, Inc.* (1981) 125 Cal.App.3d 155 was a lawsuit brought by a seller against her listing agents.  The agents represented both the seller and the buyers in the transaction and failed to disclose to the seller the buyers' intention to immediately resell the home and the agents' financial interest in the resale.  (*Id.* at p. 159.)  The agents had a duty "to disclose *all* material facts within their knowledge which might have affected Jorgensen's decision to accept the purchaser's offer." (*Id.* at p. 160.)  Under the circumstances present in *Jorgensen*, the evidence of the agents' knowledge was sufficient to go to a jury on the seller's claim of breach of fiduciary duty and related causes of action.  Here, in contrast, following trial the trial court found that respondents had no knowledge of

Choi's misrepresentations.  Thus, *Jorgensen* is not helpful to appellants.[12]

Further, we note that appellants have failed to show that they have suffered any prejudice from the court's decision to decline to allow them to amend their pleadings to add a constructive fraud claim.  Generally, an appellant "'must "show not only that the trial court erred, but also that the error was prejudicial"; i.e., "the [appellant] must show that it is reasonably probable the ultimate outcome would have been more favorable to the [appellant] had the trial court not erred . . . ."'"  (*Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1020; see Cal. Const., art. VI, § 13.)  Here, the trial court found that appellants' claims against respondents for breach of fiduciary duty and professional negligence failed as a factual matter.  Appellants have not challenged the outcomes on these causes of action, nor have they explained how they could prevail on a constructive fraud cause of action when respondents were not liable for either breach of fiduciary duty or professional negligence.

In sum, appellants have failed to show that the trial court erred in declining to allow them to amend their complaint to add a cause of action for constructive fraud against respondents, nor have they shown that any such error caused prejudice.

---

[12]  We decline to discuss *Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, as it involved the fiduciary obligations of an escrow agency and is therefore irrelevant.

19

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs of appeal.

_____
CHAVEZ, Acting P. J.

We concur:


_____
HOFFSTADT, J.


_____
BENKE, J.*

---

\*       Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.